OPINION OF THE COURT
 

 Simons, J.
 

 This appeal raises the question whether a conviction of felony murder under Penal Law § 125.25 (3) should be sustained where the homicide victim, a police officer, was shot not by one of the defendants but by a fellow officer during a gun battle following defendants’ attempted robbery. Under the
 
 *312
 
 circumstances presented, we conclude that it should, and we therefore affirm.
 

 I
 

 Defendants Santana and Hernandez conspired to ambush and rob a man who was coming to a New York City apartment building to buy drugs. The plan was to have Santana lure him into the building stairwell where Hernandez waited with a gun. In fact, the man was an undercover State Trooper, wearing a transmitter, and backed up by fellow officers.
 

 Once the Trooper was inside the building, Hernandez accosted him and pointed a gun at his head. A fight ensued during which the officer announced that he was a policeman, pulled out his service revolver and began firing. In the confusion, Hernandez, still armed, ran from the building into a courtyard where he encountered members of the police backup unit. They ordered him to halt. Instead, he aimed his gun at one of the officers and moved toward him. The officers began firing, and one, Trooper Joseph Aversa, was fatally shot in the head. His body was found near the area where Hernandez was apprehended after being wounded. Santana was arrested inside the building.
 

 The evidence at trial did not establish who killed Aversa, but the People concede that it effectively eliminated the possibility that either defendant was the shooter. Separate juries were empaneled for the two cases, and both defendants were convicted of felony murder and other charges.
 

 On appeal, defendants contend that the felony murder charges should have been dismissed because neither one of them fired the fatal shot. The Appellate Division rejected that argument. Even though a fellow officer shot Aversa, the Court concluded that defendants were properly held responsible for felony murder because their conduct "unquestionably 'forged’ a critical link in the chain of events that led to Trooper Aversa’s death” (186 AD2d 471, 473).
 

 II
 

 Some 30 years ago, this Court affirmed the dismissal of a felony murder charge on the grounds that neither the defendant nor a cofelon had fired the weapon that caused the deaths
 
 (People v Wood,
 
 8 NY2d 48). In
 
 Wood,
 
 the defendant and his companions were escaping from a fight outside a
 
 *313
 
 tavern when the tavern owner, attempting to aid police, fatally shot a bystander and one of defendant’s companions. Defendant was charged with assault and felony murder. At the time, the relevant provision of section 1044 of the former Penal Law defined murder in the first degree as "[t]he killing of a human being * * * without a design to effect death, by a person engaged in the commission of, or in an attempt to commit a felony” (§ 1044 [2]). We concluded that by the plain terms of the statute defendant could not be liable for murder, for the killing of the two men was not committed by a person "engaged in the commission of’ a felony or a felony attempt. Relying on the statute’s "peculiar wording”, we decided the case without addressing whether a similar result would be required as a matter of common law (8 NY2d, at 53;
 
 see, Commonwealth v Redline,
 
 391 Pa 486, 137 A2d 472). The
 
 Wood
 
 case acknowledged that other jurisdictions differed on whether to apply a proximate cause theory under which felons could be held responsible for homicides committed by nonparticipants or an agency theory under which felons would be responsible only if they committed the final, fatal act
 
 (People v Wood, supra,
 
 at 51-53;
 
 see,
 
 Annotation,
 
 Criminal Liability Where Act of Killing is Done by One Resisting Felony or Other Unlawful Act Committed by Defendant,
 
 56 ALR3d 239, 249-261, §§ 4, 5).
 

 In 1965, the Legislature revised the felony murder statute by removing the language that had been dispositive in
 
 Wood
 
 and replacing it with a provision holding a person culpable for felony murder when, during the commission of an enumerated felony or attempt, either the defendant or an accomplice "causes the death of a person other than one of the participants” (Penal Law § 125.25 [3]). Thus, this appeal raises the question of whether
 
 Wood
 
 remains good law despite the recasting of the Penal Law. The question is one of first impression for this Court, although some Appellate Division panels have continued to adhere to the
 
 Wood
 
 rule that the shooter must be a participant in the underlying felony
 
 (see, e.g., People v Castro,
 
 141 AD2d 658,
 
 lv denied
 
 72 NY2d 1044;
 
 People v Ramos,
 
 116 AD2d 462).
 

 The People believe those Appellate Division decisions to be in error. They premise their argument on the established construction of the term "causes the death”, which is now the operative language in the Penal Law. That term is used consistently throughout article 125 and has been construed to mean that homicide is properly charged when the defendant’s
 
 *314
 
 culpable act is "a sufficiently direct cause” of the death so that the fatal result was reasonably foreseeable
 
 (People v Kibbe,
 
 35 NY2d 407, 412;
 
 accord, Matter of Anthony M.,
 
 63 NY2d 270, 280;
 
 People v Stewart,
 
 40 NY2d 692, 697). In the People’s view the evidence here meets that standard. They contend that it was highly foreseeable that someone would be killed in a shootout when Hernandez refused to put down his gun and instead persisted in threatening the life of one of the back-up officers. Thus, under the People’s theory, Hernandez "caused the death” of Aversa. Because his attempt to avoid arrest was in furtherance of a common criminal objective shared with Santana, the People contend that the murder was properly attributed to Santana as well as under principles of accomplice liability
 
 (see, People v Friedman,
 
 205 NY 161;
 
 accord, People v Wood, supra,
 
 at 52).
 

 In response, defendants assert that
 
 People v Wood,
 
 though decided on narrow statutory grounds, states a rule that was followed for centuries at common law and one that has been embraced by a significant number of jurisdictions.
 
 *
 
 The rationale for requiring that one of the cofelons be the shooter (or, more broadly, the person who commits the final, fatal act) has been framed in several ways. Some courts have held that when the victim or a police officer or a bystander shoots and kills, it cannot be said that the killing was in furtherance of a common criminal objective
 
 (State v Severs,
 
 759 SW2d 935, 938 [Tenn Crim App]). Others have concluded that under such
 
 *315
 
 circumstances the necessary malice or intent is missing
 
 (Wooden v Commonwealth,
 
 222 Va 758, 284 SE2d 811). Under the traditional felony murder doctrine, the malice necessary to make the killing murder was constructively imputed from the
 
 mens rea
 
 incidental to perpetration of the underlying felony
 
 (Commonwealth v Redline,
 
 391 Pa 486, 493-494, 137 A2d 472, 475,
 
 supra;
 
 IV Blackstone, Commentaries, at 200-201). Thus, in
 
 Wooden,
 
 the Virginia Supreme Court concluded that where a nonparticipant in the felony is the shooter, there can be no imputation of the necessary malice to him, and no party in the causal chain has both the requisite
 
 mens rea
 
 and culpability for the
 
 actus reus.
 
 Still other courts have expressed policy concerns about extending felony murder liability. They have asserted that no deterrence value attaches when the felon is not the person immediately responsible for the death, or have contended that an expansive felony murder rule might unreasonably hold the felons responsible for the acts of others — for instance, when an unarmed felon is fleeing the scene and a bystander is hit by the bad aim of the armed victim
 
 (see, People v Washington,
 
 62 Cal 2d 777, 781-782, 402 P2d 130, 134;
 
 State v Bonner,
 
 330 NC 536, 541-542, 411 SE2d 598, 601).
 

 Ill
 

 Analysis begins with the statute. The causal language used in our felony murder provision and elsewhere in the homicide statutes has consistently been construed by this Court according to the rule in
 
 People v Kibbe
 
 (35 NY2d 407,
 
 supra),
 
 where we held that the accused need not commit the final, fatal act to be culpable for causing death. To accept defendants’ analysis would require that we hold that the phrase "causes the death” in subdivision (3), the felony murder paragraph of section 125.25, means something entirely different than it does in subdivisions (1) and (2) of the very same section. That is contrary to the normal rules of statutory construction
 
 (see, People v Bolden,
 
 81 NY2d 146, 151).
 

 That rule of construction must bend, of course, if in fact the Legislature intended the language to have a unique meaning within the context of the felony murder provision, but the legislative history of the 1965 revision reveals nothing about whether the Legislature intended to overturn
 
 People v Wood.
 
 Defendants read that silence to mean that no such substantive change in the law was envisioned by the Legislature, and they
 
 *316
 
 urge us to reaffirm the common law as it applied to felony murder to limit liability when a nonparticipant is the killer.
 

 Defendants’ position is problematic for several reasons. First, it asks us to find in the ambiguous silence of the legislative record grounds for contradicting the unambiguous language of the statute. Second, it assumes that the Legislature intended an unusually narrow construction of the word "causes” even though New York homicide decisions had defined causality more expansively
 
 (see, e.g., People v Kane,
 
 213 NY 260, 270 [error in medical treatment provided to victim does not relieve attacker of liability]). It assumes also that in choosing the statutory language the Legislature and the Temporary State Commission on Revision of the Penal Law and Criminal Code, which drafted the amended provision, disregarded the well-defined debate over the difference between "causing” a homicide and "committing” a homicide
 
 (see, e.g.,
 
 Morris,
 
 The Felon’s Responsibility for the Lethal Acts of Others,
 
 105 U Pa L Rev 50 [1956]). The Legislature could easily have written into subdivision (3) the limitation endorsed by defendants — as it did with the limitation applying to the death of a cofelon — but it chose not to do so.
 

 Third and more serious, defendants’ argument is premised on the assumption that the relevant common law pertaining to felony murder was uniform and unambiguous at the time the Legislature acted in 1965. In fact, the leading American case for limiting felony murder liability,
 
 Commonwealth v Redline
 
 (391 Pa 486, 137 A2d 472,
 
 supra),
 
 which was decided shortly before
 
 People v Wood, overturned
 
 prior case law in Pennsylvania. Variations on the felony murder doctrine were widespread in American jurisprudence, with liability turning on such factors as whether the victim was one of the felons, whether the felons initiated the gun battle and whether the deceased had been used as a shield by defendant
 
 (see, People v Washington,
 
 62 Cal 2d 777, 402 P2d 130,
 
 supra; Commonwealth v Redline, supra).
 

 Nor can it be contended that the limited view of felony murder liability was clearly the law in New York at the time the Legislature acted. In
 
 People v Wood,
 
 we noted that two of our decisions had incidentally endorsed the idea that the felon must be the killer
 
 (see, People v Giro,
 
 197 NY 152;
 
 and People v Udwin,
 
 254 NY 255), but we expressly left open questions concerning "the application of the rules of causation and foreseeability”
 
 (People v Wood, supra,
 
 at 53). Earlier, in
 
 People
 
 
 *317
 

 v Keshner
 
 (304 NY 968), we had let stand a felony murder conviction though defendants did not commit the final, fatal act. In
 
 Keshner,
 
 defendants had plotted to burn down a building and had spread gasoline in the structure but were apprehended by police before they could proceed further. Moments later, an independent force caused the gasoline to ignite, and defendants were held liable for the deaths of those caught in the blaze.
 

 In light of the statutory language and the case law prior to the revision, we conclude that the Legislature intended what appears obvious from the face of the statute: that "causes” in the felony murder provision should be accorded the same meaning it is given in subdivisions (1) and (2) of section 125.25 of the Penal Law.
 

 Unlike defendants and those courts adopting the so-called agency theory, we believe New York’s view of causality, based on a proximate cause theory, to be consistent with fundamental principles of criminal law. Advocates of the agency theory suggest that no culpable party has the requisite
 
 mens rea
 
 when a nonparticipant is the shooter. We disagree. The basic tenet of felony murder liability is that the
 
 mens rea
 
 of the underlying felony is imputed to the participant responsible for the killing
 
 (People v Wood,
 
 8 NY2d 48, 51,
 
 supra).
 
 By operation of that legal fiction, the transferred intent allows the law to characterize a homicide, though unintended and not in the common design of the felons, as an intentional killing
 
 (id.).
 
 Thus, the presence or absence of the requisite
 
 mens rea
 
 is an issue turning on whether the felon is acting in furtherance of the underlying crime at the time of the homicide, not on the proximity or attenuation of the death resulting from the felon’s acts. Whether the death is an immediate result or an attenuated one, the necessary
 
 mens rea
 
 is present if the causal act is part of the felonious conduct.
 

 No more persuasive is the argument that the proximate cause view will extend criminal liability unreasonably. First, New York law is clear that felony murder does not embrace any killing that is coincidental with the felony but instead is limited to those deaths caused by one of the felons in furtherance of their crime
 
 (People v Ryan,
 
 263 NY 298). More than civil tort liability must be established; criminal liability will adhere only when the felons’ acts are a sufficiently direct cause of the death
 
 (People v Kibbe,
 
 35 NY2d 407, 412-413,
 
 supra).
 
 When the intervening acts of another party are super
 
 *318
 
 vening or unforeseeable, the necessary causal chain is broken, and there is no liability for the felons
 
 (People v Kern,
 
 75 NY2d 638, 658,
 
 cert denied
 
 498 US 824;
 
 Matter of Anthony M.,
 
 63 NY2d 270, 280,
 
 supra; People v Kane,
 
 213 NY 260, 270,
 
 supra; State v Baker,
 
 607 SW2d 153, 156 [Mo]). Where a victim, a police officer or other third party shoots and kills, the prosecution faces a significant obstacle in proving beyond a reasonable doubt to a jury that the felons should be held responsible for causing the death.
 

 Second, the New York felony murder statute spells out the affirmative defense available to the accomplice who does not cause the death
 
 (see,
 
 Penal Law § 125.25 [3] [a]-[d]). Defendants assert that our construction of the statute’s causality language will mean that an accomplice whose partner is the shooter will have a defense but one whose unarmed partner causes the death will not. The plain language of the statute does not support that proposition. The statutory defense is available to the accomplice who (a) does not cause the death, (b) is unarmed, (c) has no reason to believe that the cofelon is armed and (d) has no reason to believe that the cofelon will "engage in conduct likely to result in death or serious physical injury”. Thus, by its terms, the defense is not limited to situations where the cofelon kills with a weapon; it applies as well to instances where some other "conduct likely to result in death” is not within the contemplation of the accomplice.
 

 In short, our established common-law rules governing determinations of causality and the availability of the statutory defense provide adequate boundaries to felony murder liability. The language of Penal Law § 125.25 (3) evinces the Legislature’s desire to extend liability broadly to those who commit serious crimes in ways that endanger the lives of others. That other States choose more narrow approaches is of no moment to our statutory scheme. Our Legislature has chosen not to write those limitations into our law, and we are bound by that legislative determination.
 

 IV
 

 Finally, we conclude that there was no error in the court’s instructions on defendant Santana’s culpability. The jury was properly charged that more than "but for” causation was required; that it must find the fatal result was the sufficiently direct and foreseeable result of Hernandez’s acts
 
 (see, People v Kibbe,
 
 35 NY2d 407, 413,
 
 supra).
 

 
 *319
 
 The evidence established that Hernandez, when confronted by the officers in the courtyard, refused to surrender and continued to move toward one officer with his gun drawn. Immediate flight and attempts to thwart apprehension are patently within the furtherance of the cofelons’ criminal objective
 
 (People v Gladman,
 
 41 NY2d 123, 129;
 
 People v Donovan, 53
 
 AD2d 27). Moreover, it was highly foreseeable that when Hernandez continued toward the officer with his gun drawn that shots would be fired and someone might be hit. Foreseeability does not mean that the result must be the most likely event. Undoubtedly, in planning the robbery, defendants did not anticipate that their victim would be a State Trooper or that a back-up unit would be on the scene. Yet, it was foreseeable that police would try to thwart crime
 
 (People v Irby, 47
 
 NY2d 894), and Hernandez was aware that police were on the scene at the point he resisted arrest and remained armed. As the Appellate Division concluded, it is simply implausible for defendants to claim that defendants could not have foreseen a bullet going astray when Hernandez provoked a gun battle outside a residential building in an urban area.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Titone, Hancock, Jr., Bellacosa, Smith and Levine concur.
 

 Order affirmed.
 

 *
 

 See, e.g., Wilson v State
 
 (188 Ark 846, 68 SW2d 100);
 
 People v Washington
 
 (62 Cal 2d 777, 402 P2d 130);
 
 Alvarez v District Ct.
 
 (186 Colo 37, 525 P2d 1131);
 
 Weick v State
 
 (420 A2d 159 [Del]);
 
 State v Crane
 
 (247 Ga 779, 279 SE2d 695);
 
 People v Morris
 
 (1 Ill App 3d 566, 274 NE2d 898);
 
 Commonwealth v Moore
 
 (121 Ky 97, 88 SW 1085);
 
 State v Garner
 
 (238 La 563, 115 So 2d 855);
 
 Campbell v State
 
 (293 Md 438, 444 A2d 1034);
 
 Commonwealth v Balliro
 
 (349 Mass 505, 209 NE2d 308);
 
 People v Austin
 
 (370 Mich 12, 120 NW2d 766);
 
 State v Bonner
 
 (330 NC 536, 411 SE2d 598);
 
 Sheriff, Clark County v Hicks
 
 (89 Nev 78, 506 P2d 766);
 
 State v Canola
 
 (73 NJ 206, 374 A2d 20);
 
 Jackson v State
 
 (92 NM 461, 589 P2d 1052);
 
 Commonwealth ex rel. Smith v Myers
 
 (438 Pa 218, 261 A2d 550);
 
 State v Severs
 
 (759 SW2d 935 [Tenn Grim App]);
 
 State v Hansen
 
 (734 P2d 421 [Utah]);
 
 Wooden v Commonwealth
 
 (222 Va 758, 284 SE2d 811). While all of these cases have imposed limitations on felony murder liability when a nonparticipant is directly responsible for the killing, in some the limitation apparently applies only when one of the cofelons is the homicide victim.
 

 Among the decisions holding that a felony murder properly lies even when a nonparticipant does the actual shooting are
 
 State v Baker
 
 (607 SW2d 153 [Mo]),
 
 Mikenas v State
 
 (367 So 2d 606 [Fla]),
 
 State v Lucas
 
 (164 Ariz 540, 794 P2d 1353 [Ariz App]), and
 
 Johnson v State
 
 (386 P2d 336 [Okla Crim App]).