[618 NYS2d 319]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ANGELA JONES, Appellant.

First Department, November 15, 1994

APPEARANCES OF COUNSEL

*Peter M. Fishbein* of counsel, New York City *(Carlton E. Thompson* on the brief; *E. Joshua Rosenkranz,* and *Kaye, Scholer, Fierman, Hays & Handler,* attorneys), for appellant.

*Robert M. Raciti* of counsel, New York City *(Mark Dwyer* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

### OPINION OF THE COURT

Tom, J.

The novel issue now being presented in this Department is whether a second Grand Jury's vote of "no true bill" to the People's re-presentment of charges contained in an earlier indictment supersedes and nullifies the original indictment.

Testimony educed at trial reveals that defendant Angela Jones, an admitted crack addict, became involved in a relationship with 62-year-old Edmund Clarke. In December 1989, various residents of the building where Clarke resided observed Clarke continually arguing with defendant, who demanded money.

At approximately 10:00 P.M. on December 29, 1989, Caroline Nicholas, a first floor resident of Clarke's building, saw defendant and Clarke again arguing about money in front of the premises, at which time defendant repeatedly threatened Clarke with harm if he did not pay her. A number of other residents testified that sometime after midnight, they heard an argument in Clarke's apartment involving both male and female voices followed by the sound of a gunshot. Ms. Nicholas testified that she looked out through her apartment door peephole and thought she recognized defendant running down the stairs. The next morning, a neighbor of Clarke realized something was amiss and called the police, who arrived and discovered Clarke's body. Clarke had died of a gunshot wound to the head.

On November 25, 1990, after having been read her *Miranda* rights, defendant made a videotaped confession to Detectives James Slattery and Michael Moore. Defendant stated that approximately two days before Clarke was killed, she agreed to have sex with him for money with the proviso that he would pay her later. Clarke, however, refused to pay defendant and on the night of December 29, 1989, defendant and

Clarke again argued about the money and he forced defendant out of the building.

Defendant alleged that she went to her friend Curtis Cooper's apartment and smoked crack with him and another male she did not know. After some discussion, in which defendant allegedly explained that she did not want Clarke hurt, the men agreed to accompany defendant up to Clarke's apartment in order to get the money owed her. Defendant stated that when Clarke answered the door, the two men pushed their way into the apartment and she saw, for the first time, that one of the men had a gun. Defendant averred that she became frightened and went downstairs to wait in the street for the money and, after approximately 20 minutes, the men ran from the building.

On December 5, 1990, a Grand Jury voted to indict defendant for felony murder and attempted robbery in the first and second degrees. On October 17, 1991, more than 10 months after the original indictment was filed, the People decided to re-present the case to a new Grand Jury and to add one count of first degree burglary. Rather than presenting just the burglary count, however, the People, inexplicably and improvidently, also presented all of the counts previously acted upon by the first Grand Jury. The second Grand Jury voted "no true bill" with respect to all of the counts. Defense counsel, based on the second Grand Jury's vote not to indict, moved to dismiss the original indictment.

By decision dated January 10, 1992, the trial court denied defendant's motion and defendant was tried pursuant to the first indictment. Defendant was thereafter convicted, after a jury trial, of murder in the second degree and sentenced to a prison term of from 15 years to life. Defendant now appeals.

It is well settled that trial courts possess the power to dismiss indictments, but that such power is circumscribed by specific statutory authority, which is not unlimited (*Matter of Holtzman v Goldman,* 71 NY2d 564, 570; *People v Franco,* 196 AD2d 357; CPL 210.20).

CPL 210.20 (1) provides, in pertinent part:

"After arraignment upon an indictment, the superior court may, upon motion of the defendant, dismiss such indictment or any count thereof upon the ground that: * * *

"(h) [t]here exists some other jurisdictional or legal impediment to conviction of the defendant for the offense charged".

The foregoing catch-all provision provides a basis for the

dismissal of an indictment not delineated in the other paragraphs of CPL 210.20 (1) *(People v Goodman,* 31 NY2d 262, 269, n).

In the instant case, the second Grand Jury, after having had a full opportunity to consider and evaluate the evidence presented by the People, voted "no true bill" with respect to all of the charges, which created a legal impediment to the conviction of defendant for the offenses charged. This legal impediment is binding upon the People's case and supersedes the original indictment (CPL 210.20 [1] [h]).

The People urge that the vote of the second, validly constituted Grand Jury, which effectively found that the evidence presented by the People was insufficient to warrant an indictment for felony murder, should be unilaterally and summarily rejected and treated as a nullity in favor of the first Grand Jury.

Article I (§ 6) of the New York State Constitution provides that "No person shall be held to answer for a capital or otherwise infamous crime * * * unless on indictment of a grand jury".*

The traditional purpose of a Grand Jury is to prevent prosecutorial excess by ensuring that: "[B]efore an individual may be publicly accused of a crime and put to the onerous task of defending himself from such accusations, the State must convince a Grand Jury composed of the accused's peers that there exists sufficient evidence and legal reason to believe the accused guilty." *(People v Iannone,* 45 NY2d 589, 594, *supra; see also, People v Lancaster,* 69 NY2d 20, 25; *People v Ford,* 62 NY2d 275, 282.)

CPL 190.75 (3) provides in relevant part that: "When a charge has been so dismissed, it may not again be submitted to a grand jury unless the court in its discretion authorizes or directs the people to resubmit such charge to the same or another grand jury."

The purpose of the foregoing statute is to prevent the prosecutorial abuse of resubmitting the same charges, after dismissal, to a new Grand Jury without sufficient and adequate reasons *(People v Martin,* 71 AD2d 928). The trial

---

* The right to an indictment by Grand Jury is dependent solely on the New York State Constitution as the Grand Jury provision contained in the Fifth Amendment to the United States Constitution is not applicable to the States *(People v Iannone,* 45 NY2d 589, 593, n 3; *Peters v Kiff,* 407 US 493, 496).

court's power to supervise the resubmission is not merely ministerial and the resubmission should be granted only upon a proper showing of a valid ground to warrant resubmission. Such grounds would encompass a showing that new evidence has been discovered; that the Grand Jury failed to give the case a complete and impartial investigation; or that there is a basis for believing that the Grand Jury otherwise acted in an irregular manner *(People v Dykes,* 86 AD2d 191).

It is clear that a District Attorney may not resubmit a case merely because he or she is dissatisfied with the outcome or is in disagreement, without any legal basis, with the Grand Jury's vote to dismiss. CPL 190.75 (3) was promulgated to eliminate such situations and curtail those instances where a prosecutor will continue to resubmit charges until the desired result is achieved *(People v Cade,* 74 NY2d 410, 414).

In the instant case, to permit the District Attorney to proceed upon the first indictment after all the charges had been dismissed by a second Grand Jury is tantamount to allowing the resubmission of charges without any legal basis. This would be in direct contravention of the intent of CPL 190.75 (3) and compromise the authority and integrity of the second Grand Jury. Further, the District Attorney herein does not point to any legal infirmities or any other reasons why the finding of the second Grand Jury should be rejected and dismissed.

In *People v Dykes (supra,* at 195), it was observed that: "The dismissal of a charge by the Grand Jurors after a full hearing, such as took place in this case, must be taken as establishing as a fact that the evidence was not of sufficient credible worth to warrant a prosecution * * *. Such a finding by the Grand Jury is justly entitled to great weight and prosecutors and Judges are not privileged to substitute their judgment for that of the Grand Jury."

The second Grand Jury has properly carried out its function and found that the evidence presented by the People was insufficient to indict defendant for the crimes charged and subject her to criminal prosecution.

The finding by the second Grand Jury must be given controlling effect and act as a finality to this proceeding. The trial court, in directing the trial to proceed pursuant to the first indictment, absent any legal basis to dismiss the finding of the second Grand Jury, is, in effect, substituting its own judgment for that of the Grand Jury. This is an impermissible interfer-

ence with the essential function of the Grand Jury which is exclusive with respect to its duties of investigating and evaluating the evidence against defendant as presented by the People. Defendant's right to have the People's evidence presented before her peers for determination of sufficiency to prosecute is a vested and protected right designed to balance any prosecutorial excess between the State and the accused. The safeguard of this fundamental right cannot be disregarded.

Further, the People's contention that CPL 200.80 permits the rejection of the vote of the second Grand Jury is without merit.

CPL 200.80 states, in relevant part: "If at any time before entry of a plea of guilty to an indictment or commencement of a trial thereof another indictment is filed in the same court charging the defendant with an offense charged in the first indictment, *the first indictment is, with respect to such offense, superseded by the second* and, upon the defendant's arraignment upon the second indictment, the count of the first indictment charging such offense must be dismissed by the court." (Emphasis added.)

It must first be noted that the foregoing provision does not apply to the case at bar but rather to those instances where both Grand Juries vote to indict. If CPL 200.80 were to provide any guidance at all, however, it would support the defendant's position as it clearly indicates that the Legislature intended for the second Grand Jury's indictment to supersede that of the first. The People's position simply has no support in the statutory scheme, in the case law, or in general principles of fair play. At the very least, the People should have set forth cognizable grounds for resubmission of the charges, pursuant to CPL 190.75 (3), which was not done.

In sum, we conclude that the second Grand Jury's vote cannot be treated as a nullity and, in fact, acts as a "legal impediment" to the prosecution of defendant pursuant to CPL 210.20 (1) (h), requiring the dismissal of the indictment.

Accordingly, the judgment of the Supreme Court, New York County (Budd G. Goodman, J.), rendered June 26, 1992, which convicted defendant, after a jury trial, of murder in the second degree and sentenced her to a prison term of from 15 years to life, is reversed, on the law, and the indictment is dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant

to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

SULLIVAN, J. P. (dissenting). The trial evidence shows that in the early morning hours of December 30, 1989 defendant brought two men to the fourth floor apartment of 62-year-old Edmund Clarke at 248 Lenox Avenue in Manhattan so that they could rob Clarke, who usually kept several hundred dollars in his wallet and who, according to defendant, owed her $10 for having engaged in sex with him.

Earlier that evening, one of the tenants had seen Clarke and defendant together in the building arguing over money. Approximately one hour later, Paula Simpson, who lived across the street, saw defendant with two men, known to her as Curtis and Tony, on the front steps of Clarke's building. Defendant was overheard telling the two men, "[M]ake sure I get mine." Later that night, sometime after midnight, several residents of the apartment building awoke to the sound of an argument coming from Clarke's apartment; at least two witnesses heard a woman's voice as well as male voices. At about the same time, the sound of a gunshot rang out from Clarke's apartment. Immediately thereafter, two or three persons came running down the stairs from the fourth floor. A first floor tenant, looking through her peephole, saw a woman who looked like defendant running through the front vestibule.

At around 5 or 6 o'clock that morning, defendant, acting nervous, appeared at Simpson's apartment door. She had brought with her a supply of crack, which the two smoked. Defendant told Simpson that Tony and Curtis had killed "Pop". Simpson recalled that defendant hid in the closet when she saw a police car driving down the block.

Later that morning, a next door neighbor found Clarke lying on his bed, dead from a single bullet, which, it was later determined, had penetrated his body through the right eye and lodged in his skull. The apartment was in disarray. The responding police officer, who vouchered some of Clarke's personal effects, could not find the victim's wallet or any cash in the apartment.

Eleven months later, defendant gave a videotaped statement to an Assistant District Attorney in which she stated that Clarke had reneged on a promise to pay her $10 for sex, and

that she complained to Curtis Cooper and another man, both of whom agreed to accompany her to collect the money. She knew that Clarke usually kept several hundred dollars in his wallet. Defendant told the two men that she did not want Clarke hurt. When she arrived with them at Clarke's apartment, and just before they pushed in the apartment door, she saw Curtis's friend reach into his pocket and pull out a gun. As the two men forced their way into the apartment, they shut the door behind them, leaving defendant in the hallway. She could hear Clarke inside the apartment pleading, "[S]top, leave me alone." Defendant became frightened and went downstairs to wait for the two men outside the building so that she could collect her share of the proceeds. About 20 minutes later, Curtis and his friend ran out of the building past her. Defendant denied receiving any money from the robbery.

Defendant did not call any witnesses at trial, at the conclusion of which the jury found her guilty of murder in the second degree ([felony murder] Penal Law § 125.25 [3]). Two issues are presented on appeal, namely, whether the People retained the power to prosecute defendant under the instant indictment after a second Grand Jury refused to return a superseding indictment on the identical charges and whether the trial court properly refused to charge, under Penal Law § 125.25 (3), the affirmative defense to felony murder.

Following the presentation of evidence to a December 1990 Grand Jury, defendant was charged with murder and attempted robbery in the first and second degrees and was arraigned on December 21, 1990. In February 1991 the Trial Justice, pursuant to CPL 210.20, reviewed the Grand Jury minutes and denied defendant's motion to dismiss for insufficiency of evidence.

On October 17, 1991, before the commencement of trial, the prosecution sought a superseding indictment before another Grand Jury for the purpose of adding to the pending charges a charge of burglary in the first degree. Rather than submit only the additional burglary charge, however, the prosecutor re-presented the felony murder and attempted robbery charges as well. The Grand Jury returned a "no true bill" on all the charges submitted to it, including felony murder. On the basis of this development, defendant immediately moved to dismiss the indictment. After reviewing and comparing the minutes of both Grand Jury presentations, the trial court

denied the motion, finding that the second Grand Jury had no power to dismiss the pending indictment.

The circumstances justifying the dismissal of an indictment returned by a legally constituted Grand Jury are statutorily defined and extremely restricted. *(See,* CPL 210.20;[1] *see also, Matter of Holtzman v Goldman,* 71 NY2d 564, 570.) None of those circumstances are present here; the second Grand Jury's disagreement with the first Grand Jury's conclusion that the evidence was sufficient to sustain the charges is not one of the enumerated statutory grounds for dismissal.

The power to seek a new Grand Jury indictment to replace the pending one, long recognized at common law, is now codified. *(See,* CPL 200.80; *see also,* CPL 190.75 [3].) Since a prosecutor's power to resubmit charges to the same or different Grand Juries was unrestricted at common law *(see, People v Wilkins,* 68 NY2d 269, 273; *People ex rel. Flinn v Barr,* 259 NY 104), a circumstance which provided the opportunity for prosecutorial abuse, "the Legislature, over the years, enacted several provisions in the Criminal Procedure Law, and its predecessors, to check such abuses." *(People v Cade,* 74 NY2d 410, 414.) In interpreting the former Code of Criminal Procedure, the Court of Appeals consistently held that a prosecutor could resubmit additional charges to a second Grand Jury without court approval "unless there was an initial refusal by a Grand Jury to indict or a prior court dismissal of the indictment." *(Supra,* at 414-415, and cases cited therein.) The

---

1. Insofar as is relevant, CPL 210.20 provides:

"1. After arraignment upon an indictment, the superior court may, upon motion of the defendant, dismiss such indictment or any count thereof upon the ground that:

"(a) Such indictment or count is defective, within the meaning of section 210.25; or

"(b) The evidence before the grand jury was not legally sufficient to establish the offense charged or any lesser included offense; or

"(c) The grand jury proceeding was defective, within the meaning of section 210.35; or

"(d) The defendant has immunity with respect to the offense charged, pursuant to section 50.20 or 190.40; or

"(e) The prosecution is barred by reason of a previous prosecution, pursuant to section 40.20; or

"(f) The prosecution is untimely, pursuant to section 30.10; or

"(g) The defendant has been denied the right to a speedy trial; or

"(h) There exists some other jurisdictional or legal impediment to conviction of the defendant for the offense charged; or

"(i) Dismissal is required in the interest of justice, pursuant to section 210.40."

Criminal Procedure Law did not change the rule. *(Supra,* at 415.) Thus, if the Grand Jury votes to charge a defendant, the prosecutor may seek a superseding indictment without prior court approval. On the other hand, if a charge is dismissed by the Grand Jury, it may not be resubmitted to the same or another Grand Jury without prior court authorization. (CPL 190.75 [3].)

By requiring judicial approval, the Legislature has provided a check on a prosecutor's power to attempt a second Grand Jury presentation after a "no bill" is voted. Conversely, where there has been an indictment and the same charges are being re-presented to a second Grand Jury, there is no similar check since the same potential for prosecutorial abuse does not exist. *(People v Cade, supra,* at 417.)[2] In the instant matter, while the prosecutor chose, perhaps foolishly in retrospect, to re-present all the charges to the second Grand Jury, there is nothing to suggest that his motive was improper or that he had any purpose other than to add a burglary count.

In sanctioning superseding indictments, the Legislature, except with respect to a charge that is duplicated by the second Grand Jury's action, specifically provided that charges voted by a first Grand Jury survive the vote of a subsequent Grand Jury. CPL 200.80 provides that if, before a plea of guilty or the commencement of a trial, "another indictment is filed in the same court charging the defendant with an offense charged in the first indictment, the first indictment is, with respect to such offense, superseded by the second and, upon the defendant's arraignment upon the second indictment, the count of the first indictment charging such offense must be dismissed by the court. The first indictment is not, however, superseded with respect to any count contained therein which charges an offense not charged in the second indictment." Thus, any unduplicated charge voted by the first Grand Jury is preserved. Charges not submitted to the second Grand Jury are not superseded and remain intact as part of the first indictment. If the second Grand Jury rejects a new charge submitted to it, its decision does not affect the validity of the other charges in the pending indictment, even if, as the statute has to be read, the second Grand Jury's determination reflects an obvious rejection of evidence accepted by the first

2. The majority offers neither authority nor reasoned support for its observation that a prosecution under the first indictment after the second Grand Jury's dismissal of the same charges constitutes a resubmission without any legal basis.

Grand Jury. According to the plain meaning of the statute, the only charges voted by the first Grand Jury that are dismissed by virtue of the second Grand Jury's action are those as to which the second Grand Jury has also voted an indictment, that is, those that are duplicated.

If, in enacting CPL 200.80, which serves a procedural not substantive function, the Legislature had intended to make a second Grand Jury's determination superior to that of the first so that a second Grand Jury could dismiss charges already voted by a first Grand Jury, it would have provided therefor. But it did not. Nor, as noted, did it so provide in any of the paragraphs enumerating the limited ways in which an indictment may be dismissed. (See, Matter of Holtzman v Goldman, 71 NY2d, supra, at 570.)

Unable to point to any statutory provision specifically permitting dismissal, the majority relies on the catch-all provision of CPL 210.20 (1), which empowers the court to dismiss an indictment where "[t]here exists some other jurisdictional or legal impediment to conviction" (para [h]). This provision was also relied upon in People v Franco (196 AD2d 357), a Second Department case which, on similar facts, held that a second Grand Jury's vote of "no bill" with respect to all the charges before it, including those already voted by the first Grand Jury, effected a nullification of the first Grand Jury's determination. The Franco Court reasoned that permitting the People to proceed on the original indictment threatened to render the second Grand Jury's vote a "nullity". (Supra, at 362.) Of course, the converse is also true. Putting aside, for the moment, the statutory scheme for superseding indictments, there is no logic in having the second Grand Jury's determination prevail over the first, which heard the same case.[3] What is significant is that, although defendant had to face the charges contained in the instant indictment even though one of the two Grand Juries hearing the evidence refused to indict her, she had a full opportunity to present a defense at trial, at the conclusion of which a petit jury, hearing that evidence, found her guilty beyond a reasonable doubt.

The Franco Court's nullification premise requires acceptance of the notion that the Legislature vested in the second

---

3. The majority's suggestion that the People should have, pursuant to CPL 190.75 (3), set forth "cognizable grounds" for resubmission of the charges adds nothing to the analysis. Obviously, if the majority's disposition is correct, the People can avail themselves of that remedy.

Grand Jury the power to effect the dismissal of existing charges without making that power explicit. While CPL 190.75 (1) provides that a Grand Jury's finding of legal insufficiency as to the evidence or lack of reasonable cause as to the defendant's culpability for a charge as to which the evidence is sufficient results in a dismissal, nothing in the statute suggests that such a finding invalidates a preexisting indictment. Since there is no statutory basis for a dismissal of the indictment in the circumstances presented, the trial court properly denied the motion.

Defendant argues that she was entitled to a charge on the affirmative defense to felony murder because she learned that Curtis's accomplice had a gun "only when they were on the verge of entering Mr. Clarke's apartment and the crime had advanced beyond her control." Penal Law § 125.25 (3) provides that it is an affirmative defense to felony murder if the defendant was not the only participant in the underlying crime and he "(a) [d]id not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (b) [w]as not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and (c) [h]ad no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and (d) [h]ad no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury." In considering the application of this defense, the Court of Appeals has cautioned, "The language of Penal Law § 125.25 (3) evinces the Legislature's desire to extend liability broadly to those who commit serious crimes in ways that endanger the lives of others." *(People v Hernandez,* 82 NY2d 309, 318.)

A defendant is entitled to consideration of the affirmative defense when he demonstrates that there exists a reasonable view of the evidence which would permit the trier of the fact to find that each and every element of the defense was established by a preponderance of the evidence. *(People v Watts,* 57 NY2d 299, 301; *see also,* Penal Law § 25.00 [2].) The proof may come from either side, the prosecution or defense. *(People v Cable,* 96 AD2d 251, 261, *revd on other grounds* 63 NY2d 270; *see also, People v Smith,* 55 NY2d 888.) The standard for determining whether to charge the defense is well settled. When the trial evidence, viewed in the light most

favorable to the defendant, supports the defense, the trial court must, when requested, instruct the jury on that defense. *(People v Watts, supra,* at 301.) "[W]hen no reasonable view of the evidence would support a finding of the tendered defense, the court is under no obligation to submit the question to the jury." *(Supra,* at 301.) Since defendant could not prove one of the four prerequisites to a submission of the defense, she was not entitled to the requested charge.

On this record, there is no showing that defendant had a "reasonable ground to believe that [no] other participant was armed" with a deadly weapon. (Penal Law § 125.25 [3] [c].) In her videotaped statement defendant admitted that she saw a gun in the hands of one of the perpetrators as they were about to enter the apartment. In connection with his request that the affirmative defense be charged, defense counsel took the position that at that point defendant left and dissociated herself from the crime. However, defendant also admitted in that same statement that, after seeing the gun, she waited outside the building for some 20 minutes in order to collect her share of the robbery proceeds. Thus, even considering the evidence in the light most favorable to defendant, her continued participation in the underlying crime for some 20 minutes after she saw the gun in an accomplice's hand, as she waited to collect her share of the proceeds, belies any claim that she dissociated herself from the crime and precludes any argument that she had "no reasonable ground to believe that any other participant [entered the apartment and] was armed" with a deadly weapon. By her own version of the events of that night, defendant was not entitled to the affirmative defense charge. *People v Cable* (63 NY2d 270, *supra),* upon which defendant relies, does not compel a different result. In that case there was no evidence that defendant Godbee knew that her codefendant was armed.

Accordingly, I dissent and would affirm the judgment.

CARRO and KUPFERMAN, JJ., concur with TOM, J; SULLIVAN, J. P., and NARDELLI, J., dissent in a separate opinion by SULLIVAN, J. P.

Judgment of the Supreme Court, New York County, rendered June 26, 1992, reversed, and the indictment is dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant

to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.