[908 NYS2d 419]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TIMMY LEE WALKER, Appellant.

Second Department, September 28, 2010

## APPEARANCES OF COUNSEL

*Lynn W. L. Fahey*, New York City (*Jonathan M. Kratter* of counsel), for appellant, and appellant pro se.

*Richard A. Brown, District Attorney*, Kew Gardens (*John M. Castellano, Sharon Y. Brodt* and *Roni C. Piplani* of counsel), for respondent.

## OPINION OF THE COURT

BELEN, J.

The defendant, Timmy Lee Walker, spent the evening of Saturday, September 4, 2004, and the early morning hours of the next day in a basement apartment in Queens, smoking large quantities of crack cocaine and drinking large quantities of alcohol. As the night progressed, he also kidnapped and robbed at least two people at gunpoint. After one of these kidnapping victims became very agitated, the defendant allowed him to leave on the condition that he come back with money. When instead, the victim returned with his armed stepson and some friends, the defendant shot and killed the stepson, firing five rounds at him. The defendant was convicted of this felony murder and now appeals, principally arguing that the trial court should have given a justification charge to felony murder. We disagree and hold that, while the defense of justification may be available to an underlying felony offense in a felony murder prosecution, it is never a defense to felony murder itself.

The defendant was indicted for, inter alia, murder in the second degree (felony murder) (Penal Law § 125.25 [3]), kidnapping in the second degree (two counts) (Penal Law § 135.20), robbery in the first degree (Penal Law § 160.15 [2]), criminal possession of a weapon in the second degree (Penal Law § 265.03 [1]), and criminal possession of a weapon in the third degree (two counts) (Penal Law § 265.02 [1], [4]). At trial, the People adduced the following evidence. Reles Jones testified that on September 4, 2004, at approximately 9:30 P.M., he went to a basement apartment in Queens to pick up "Theresa," whom he

had recently met. Immediately upon entering the apartment, an individual whom Jones had never seen before and whom he identified at trial as the defendant, Timmy Lee Walker, placed a gun at his back, searched him, took his money, keys, wallet, and other personal items, and ordered him to sit down. Also inside the apartment at that time were Theresa and two men Jones had never seen before, one of whom he later learned was "Joe." The defendant, Theresa, and Joe then drank and did drugs, all of which they purchased with Jones's money. At no time did the defendant put away the gun. During this time, Jones heard the defendant claim that when the drugs ran out, Theresa would be "the only witness."

Over the next several hours, others arrived in the apartment, whom the defendant also robbed of their money and personal belongings. The defendant did not allow Jones to leave the apartment, and threatened him with "consequences" if he left or attempted to do so.

At some point, James Hubbard, whom Jones identified as "Jimmy," arrived, and the defendant robbed him of money and drugs, and initially forced him to remain in the apartment. Because Hubbard became upset, the defendant allowed him to leave the apartment, but only on the condition that Hubbard borrow money from his employer, and return to the apartment.

Hubbard later returned to the apartment with his stepson, Tony Brunson, and Brunson's friend, Gladmon McDowell.

Jones testified that an individual whom he later learned was Brunson, and whom he described as "[a] very large kid," entered the basement apartment first, "forcibly" entering through the apartment door. An individual Jones later learned was McDowell followed close behind. Jones testified that immediately upon Brunson's entry, gunfire began. Jones recalled hearing five or six gunshots, then someone stunned him with a stun gun.

According to McDowell, the events transpired as follows: after Brunson knocked on the basement door, it opened, and three men ran out. McDowell proceeded to attack one of the men— later identified as Jones—with a stun gun. McDowell then turned toward the basement, looked inside, and saw the lower half of a man sitting in a chair with a gun in his lap; he then heard about three or four gunshots. At that point, McDowell turned and ran up the stairs toward the backyard, but after hearing Hubbard scream his name, he turned back and ran into the basement.

McDowell further testified that immediately upon entering the apartment, he saw Hubbard and the defendant, whom McDowell did not know, wrestling over a gun. McDowell grabbed the gun from the two men. Brunson was lying in the doorway on his face, bleeding apparently from having been shot. McDowell then aimed the gun at the defendant's head and tried to pull the trigger, but it jammed. Hubbard and the defendant renewed their tussle, so McDowell hit the defendant in the head with the gun, which had little effect. The gun was hot from having been fired, forcing McDowell to drop it. McDowell then entered the fight to assist Hubbard, whom the defendant was biting in the chest. McDowell first tried to use the stun gun on the defendant, but it failed to operate, so he picked up a television and hit the defendant over the head with it, but it did not stop the defendant. Next, McDowell ripped a sink off the wall and hit the defendant with it, which also failed to slow him down. Hubbard then smashed the defendant over the back of the head with a glass bottle, but the defendant kept fighting. Eventually, the defendant stopped moving, and McDowell and Hubbard tied his feet with a phone cord to restrain him. McDowell and Hubbard then went over to Brunson's body, determined that he was not alive, and left the basement. They returned to McDowell's car, drove to the end of the block, and called 911.

Police Officer Kenneth Norris and his partner Scott Martin received a radio transmission and responded to the scene. When Norris entered the basement, he saw two males lying on the floor. The first, later identified as Brunson, was inside the second doorway, while the other, later identified as the defendant, was about 10 feet further into the room. The defendant was face down and tied with a telephone cord, but was responsive. According to Norris, he recovered two handguns from underneath Brunson.

Lieutenant David Burke of the emergency medical unit testified that he also responded to the scene, and found two males lying face down on the floor. The first male, later identified as Brunson, had multiple gun shot wounds and was not breathing spontaneously, although he did have a pulse. Burke testified that, when Brunson was rolled over, a handgun was found on the floor directly beneath him. Brunson later died at the hospital.

Detective Samuel Gilford testified that he collected evidence from the basement apartment, including five discharged shells, a 9 millimeter weapon, a .22 caliber weapon, and a deformed

lead bullet. According to Gilford, both weapons were found without bullets.

Detective Robert Reed testified that he interviewed the defendant at the hospital, and after advising him of his *Miranda* rights (*see Miranda v Arizona*, 384 US 436 [1966]), the defendant stated that he had been smoking crack in the apartment with an acquaintance, Joe, when two males entered. One of the men, who was heavy set, held a long-barreled gun which he appeared to be raising. The defendant claimed that he had a 9 millimeter gun in his hand, and upon seeing the other man's gun, he fired approximately five times at the man. The defendant was never questioned about Jones and never mentioned Jones in his statement to police.

After the People rested, the defense did not present any evidence.

During the ensuing charge conference, defense counsel did not specifically request a justification charge. Instead, during summation, the defense first introduced a theory of justification by reiterating the defendant's statement to the police that "someone came in brandishing a gun" and that the defendant had fired his gun at the intruder only in self-defense. In the People's summation, the prosecutor conceded that "there is an element of self defense here," and explained that such fact was the reason the defendant had not been charged with intentional murder. The prosecutor then repeatedly emphasized to the jury that a justification defense was not available for felony murder, and defense counsel objected each time. After the prosecution's summation, the defense, for the first time, specifically requested a justification charge, arguing that the defense applied to felony murder. The Supreme Court denied the request, finding, as a matter of law, that justification was not a defense available for felony murder, and the defense took exception. Notably, no facts suggest, and the defendant made no claim, that he had a justification defense with regard to the underlying felony of kidnapping.

On appeal, the defendant principally challenges the Supreme Court's failure to charge the jury on the issue of justification with respect to the felony murder count.

The defense of justification permits an individual to use force to defend himself, a third person, or a premises under certain circumstances (*see* Penal Law art 35; *People v McManus*, 67 NY2d 541, 544-545 [1986]). A claim of justification does not excuse a criminal act, but rather renders that act lawful, even if

the justification claim fails to negate an element of the offense (*see* Penal Law § 35.05; *People v McManus*, 67 NY2d at 546). The trial court must charge the jury with respect to the defense of justification whenever, viewing the record in the light most favorable to the defendant (*see People v Padgett*, 60 NY2d 142, 144 [1983]; *People v Ogodor*, 207 AD2d 461 [1994]), there is any reasonable view of the evidence that would permit the factfinder to conclude that the defendant's conduct was justified (*see People v Petty*, 7 NY3d 277, 284 [2006]; *People v Fermin*, 36 AD3d 934 [2007]). A failure to give the justification charge under such circumstances constitutes reversible error (*see People v Maher*, 79 NY2d 978, 982 [1992]; *People v Padgett*, 60 NY2d at 145; *People v Watts*, 57 NY2d 299 [1982]; *People v Fermin*, 36 AD3d at 935).

Under New York's felony murder statute, a defendant is guilty of felony murder if he or she commits or attempts to commit an enumerated felony, and "in the course of and in furtherance of such crime or of immediate flight therefrom," he, she, or an accomplice "causes the death of a person other than one of the participants" (Penal Law § 125.25 [3]; *see People v Stokes*, 88 NY2d 618, 625 [1996]). The felony murder statute imposes a penalty for the heightened risk to life inherent in the commission of certain enumerated felonies (*see People v Stokes*, 88 NY2d at 623-626; *People v Hernandez*, 82 NY2d 309, 318 [1993]). "The language of Penal Law § 125.25 (3) evinces the Legislature's desire to extend liability broadly to those who commit serious crimes in ways that endanger the lives of others" (*People v Hernandez*, 82 NY2d at 318; *see People v Berzups*, 49 NY2d 417, 427 [1980]). "[I]n felony murder the underlying felony is not so much an element of the crime but instead functions as a replacement for the *mens rea* or intent necessary for common-law murder" (*People v Berzups*, 49 NY2d at 427). "The purpose of the felony-murder rule is to deter even accidental killings in the commission of designated felonies by holding the felon strictly liable for murder" (*People v Loustaunau*, 181 Cal App 3d 163, 170, 226 Cal Rptr 216, 219 [1986]; *see People v Hernandez*, 82 NY2d at 318). As discussed below, in the vast majority of situations, a defendant charged with felony murder is precluded as a matter of law from relying on a justification defense since, having created a potentially life threatening situation, the defendant forfeits the right to use deadly physical force against the victim or any rescuer.

Indeed, nearly every jurisdiction that has opined on the matter makes a justification defense unavailable to those who initi-

ated the underlying felonies (*see e.g. State v Celaya*, 135 Ariz 248, 660 P2d 849 [1983]; *Gray v State*, 463 P2d 897 [Alaska 1970]; *People v Loustaunau*, 181 Cal App 3d 163, 226 Cal Rptr 216 [1986]; *People v Burns*, 686 P2d 1360 [Colo 1983]; *State v Amado*, 254 Conn 184, 756 A2d 274 [2000]; *Holland v State*, 916 So 2d 750 [Fla 2005], *cert denied* 547 US 1078 [2006]; *Roche v State*, 690 NE2d 1115 [Ind 1997]; *State v Marks*, 226 Kan 704, 712, 602 P2d 1344, 1351 [1979]; *State v Scales*, 655 So 2d 1326 [La 1995], *cert denied* 516 US 1050 [1996]; *Sutton v State*, 139 Md App 412, 776 A2d 47 [2001], *cert denied* 366 Md 249, 783 A2d 223 [2001]; *Commonwealth v Garner*, 59 Mass App Ct 350, 795 NE2d 1202 [2003]; *Layne v State*, 542 So 2d 237 [Miss 1989]; *Commonwealth v Foster*, 364 Pa 288, 72 A2d 279 [1950]; *Smith v State*, 209 Tenn 499, 354 SW2d 450 [1961]; *Davis v State*, 597 SW2d 358 [Tex 1980], *cert denied* 449 US 976 [1980]; *State v Dennison*, 115 Wash 2d 609, 801 P2d 193 [1990]).

The majority of cases where a defendant seeks a justification defense to a felony murder charge involve armed robbery (*see e.g. State v Celaya*, 135 Ariz 248, 660 P2d 849 [1983]; *Gray v State*, 463 P2d 897 [Alaska 1970]; *People v Burns*, 686 P2d 1360 [Colo 1983]; *State v Amado*, 254 Conn 184, 756 A2d 274 [2000]; *Holland v State*, 916 So 2d 750 [Fla 2005]; *Roche v State*, 690 NE2d 1115 [Ind 1997]; *State v Marks*, 226 Kan 704, 712, 602 P2d 1344, 1351 [1979]; *State v Scales*, 655 So 2d 1326 [La 1995]; *Layne v State*, 542 So 2d 237 [Miss 1989]; *State v Bell*, 338 NC 363, 450 SE2d 710 [1994], *cert denied* 515 US 1163 [1995]; *Commonwealth v Foster*, 364 Pa 288, 72 A2d 279 [1950]). In all of those cases, courts have concluded that a defendant committing an enumerated crime cannot claim self-defense if the defendant kills the victim after the victim resists (*see e.g. People v Guraj*, 105 Misc 2d 176, 178 [1980] [justification defense properly rejected since it was immaterial whether the decedent's nephew or the defendant fired the first shot, since the jury found beyond a reasonable doubt that the defendant participated in the armed robbery before any shots were fired]; *Layne v State*, 542 So 2d 237, 243 [Miss 1989] [justification defense unavailable since "there appears no reasonable basis upon which the jury may rationally have concluded that (the defendant) had not participated actively in the robbery of (the victim) and killed (the victim) in his effort to escape therefrom"]; *State v Celaya*, 135 Ariz 248, 254, 660 P2d 849, 855 [1983] [where the underlying felony was not completed at the time the victim was killed and the defendant was the initial aggressor, "it is immaterial

whether the victim of the robbery or the defendant fired first"]; *Rainer v State*, 342 So 2d 1348, 1357 [Ala 1977] [trial court gave defendant more than he was entitled to in charging the jury on self-defense and on all four degrees of homicide given that the defendant committed robbery and contended that he killed the victim only after the victim refused to put down a shotgun after the defendant had ordered him to do so]; *see also People v Loustaunau*, 181 Cal App 3d at 170, 226 Cal Rptr at 219 ["(w)hen a burglar kills in the commission of a burglary, he cannot claim self-defense, for this would be fundamentally inconsistent with the very purpose of the felony-murder rule"]).*

In New York, the justification defense applies to depraved indifference murder, rendering the reckless disregard of human life lawful under certain circumstances (*see People v McManus*, 67 NY2d 541, 545-546 [1986]). In *McManus*, there was evidence that the defendant committed a reckless killing because he believed that his friend's life was in danger. Although the elements of depraved indifference murder were satisfied, under the circumstances, the defendant may have been justified in committing the homicide. Accordingly, the Court reversed the conviction and ordered a new trial, holding that the defense of justification should have been submitted to the jury (*see People v McManus*, 67 NY2d at 546).

In New York, the felony murder statute limits the felonies to which it applies to certain enumerated crimes, including robbery, burglary, kidnapping, arson, rape in the first degree, and aggravated sexual abuse (*see* Penal Law § 125.25 [3]). By doing

---

* Several jurisdictions, however, allow a justification defense to felony murder where there is evidence that the elements of felony murder may not have been satisfied. For example, North Carolina allows defendants to raise the justification defense to felony murder when the evidence supporting the underlying felony charge is weak, when the defendant clearly articulated his intent to withdraw from the situation, or when the killing occurred at a time when the dangerous situation created by the defendant no longer existed (*see State v Bell*, 338 NC 363, 386-387, 450 SE2d 710, 723 [1994]; *see also Gray v State*, 463 P2d 897 [Alaska 1970] [no justification charge absent a showing that dangerous situation no longer existed at time of killing]). In Massachusetts, justification may be a defense to felony murder when the defendant is not the initial aggressor (*see Commonwealth v Garner*, 59 Mass App Ct 350, 363-364, 795 NE2d 1202, 1214 [2003] [self-defense may apply to a felony murder charge based on the predicate of unlawful possession of a firearm]). In Georgia, where a felony murder charge can be predicated on assault, a justification defense is permitted if "there is sufficient evidence of a confrontation between the defendant and the victim" (*Heard v State*, 261 Ga 262, 262-263, 403 SE2d 438, 439 [1991]).

so, New York ensures that only defendants who initiated the enumerated felonies may be charged with felony murder, the principle followed in most states. In general, a defendant may assert the justification defense if there is evidence that he or she committed a felony to save his or her life or the life of another (*see People v McManus*, 67 NY2d at 546; *People v Johnson*, 185 AD2d 860, 861 [1992]; *People v Burns*, 686 P2d 1360, 1362 [Colo 1983]). However, a justification defense must be asserted as to the underlying felony, not to the felony murder charge itself. The purpose of the felony murder statute is to punish a felon for killing a victim when the mortal danger arises from his or her commission of an enumerated felony, even when the killing was in self-defense (*see* Penal Law § 125.25 [3]; *People v Hernandez*, 82 NY2d at 318). Therefore, a justification charge as to felony murder itself would directly undermine the legislative purpose of the statute.

To the extent that this Court's decision in *People v Hewitt* (258 AD2d 597 [1999]) could be read as holding that a justification defense is available to a felony murder charge, it should not be followed.

The defendant's remaining contentions are without merit.

In light of the foregoing, the judgment is affirmed.

MASTRO, J.P., SANTUCCI and CHAMBERS, JJ., concur.

Ordered that the judgment is affirmed.