[Cite as *State v. Bissell*, 2024-Ohio-5317.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,                :

                                No.  113158

    v.                                  :

LEANDER BISSELL,                        :

    Defendant-Appellant.               :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:**  November 7, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-676363-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carl J. Mazzone and Margaret Graham, Assistant Prosecuting Attorneys, *for appellee*.

Law Office of Timothy Farrell Sweeney and Timothy Sweeney, *for appellant*.

---

EMANUELLA D. GROVES, P.J.:

{¶ 1} Defendant-appellant, Leander Bissell ("Bissell"), appeals his convictions for murder under R.C. 2903.02(B) and other charges.  For the reasons that follow, we reverse the convictions for felony murder and failure to control.

However, we find that the evidence supported a conviction for the lesser included offense of involuntary manslaughter with a predicate of reckless assault on a firefighter, a felony of the first degree. We therefore modify the verdict to a finding of guilt to that charge and remand for sentencing.

{¶ 2} On the evening of November 19, 2022, at approximately 8:15 p.m., Firefighters Johnny Tetrick ("Firefighter Tetrick"), Bryan Burvis ("Firefighter Burvis"), Tony Trujillo ("Firefighter Trujillo"), and Lieutenant Jeffrey Vollmer ("Lt. Vollmer") were called to the scene of a collision on Interstate 90 ("I-90") near Martin Luther King Blvd ("MLK"). When they arrived, several police cars were already present, directing traffic into the right two lanes of traffic on the four-lane highway. ("Lane 1" is the high speed left lane, "Lane 2" the innermost left lane, "Lane 3" the innermost right lane, and "Lane 4" the right lane.) They approached from the East 72nd Street entrance onto I-90 and made their way to MLK. The collision had involved a car and a truck. The car had rolled over and was lying at a 90-degree angle on the left shoulder into Lane 1. After an inspection, firefighters determined the vehicle was empty and there was no extraction necessary. There was a truck as well parked on the right side of the road next to Lane 4. Someone, who was later identified as the passenger of the truck, was seated on the truck bed talking to officers.

{¶ 3} Traffic slowed in response to the collision and police presence. Bissell, rather than following the flow of traffic to Lanes 3 and 4, drove around the police cars to Lane 2, apparently in an attempt to avoid the gridlock. Around the time that

Bissell neared the site of the collision, Firefighters Tetrick and Trujillo, with Tetrick in the lead, approached Lane 2. A large 70-foot tractor trailer was to the right. The driver of that truck had a dash camera that filmed what happened next. As Firefighter Tetrick crossed the highway, he briefly looked to his left, jogged forward, and bent down to pick up some debris in the road with his back to oncoming traffic. As he bent down, Bissell drove through at a speed between 45 and 60 m.p.h., hitting Firefighter Tetrick. The impact knocked Firefighter Tetrick across three lanes of traffic into the berm on the right side of the highway. Bissell did not stop and fled the scene. Firefighter Tetrick died as a result of the injuries he sustained.

{¶ 4} On November 28, 2022, a grand jury was convened and issued an indictment charging Bissell with murder, an unclassified felony pursuant to R.C. 2903.02(B) (Count 1); two counts of felonious assault, felonies of the second degree pursuant to R.C. 2903.11(A)(1) and (A)(2) (respectively, Counts 2 and 3); involuntary manslaughter, a felony of the third degree pursuant to R.C. 2903.04(B) (Count 4); failure to comply, a misdemeanor of the first degree (Count 5); aggravated vehicular homicide, a felony of the third degree (Count 6); and failure to stop at the scene of an accident, a felony of the third degree (Count 7). Each count contained a forfeiture specification seeking forfeiture of a 2004 Chevrolet Malibu used in the commission of the crimes.

{¶ 5} Bissell elected to try the case to the bench. After hearing the testimony of the State's witnesses, Bissell elected not to present a case in chief. The trial court found Bissell guilty on all charges. The trial court found that Counts 2, 3, 4, and 6

merged into Count 1 and imposed a sentence of 15 years to life imprisonment on Count 1. On Count 5, the trial court imposed a sentence of six months, and on Count 7 the court imposed a prison term of 1 year. The trial court elected to run Count 7 consecutive to Count 1 for a total period of confinement of 16 years to life. The sentence on the misdemeanor, Count 5, was ordered to run concurrently with those charges.

{¶ 6} Bissell appeals assigning the following errors for our review.

### Assignment of Error No. 1

The trial court erred and deprived Bissell of due process of law, as guaranteed by the Fourteenth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution, by finding Bissell guilty of felony murder based on felonious assault (Count 1), and of both counts of felonious assault (Counts 2 and 3) as those verdicts are not supported by sufficient evidence.

### Assignment of Error No. 2

Bissell's convictions in Counts 1, 2, and 3, for felony murder and felonious assault, are against the manifest weight of the evidence.

### Assignment of Error No. 3

The trial court violated Bissell's constitutional rights, in a case involving a homicide committed by and with his vehicle, when the court found Bissell guilty of felony murder with felonious assault as the sole predicate offense, and failed to apply the merger doctrine as adopted in the large majority of U.S. jurisdictions, in violation of the Fifth, Sixth, Eighth, and Fourteen Amendments, U.S. Constitution, and Article I, Sections 9, 10, and 16, of the Ohio Constitution.

### Assignment of Error No. 4

Bissell's convictions of involuntary manslaughter and failure to comply with an order of a police officer in Counts 4 and 5 are not supported by sufficient evidence, and thus violate due process, or, at the very least, they are against the manifest weight of the evidence.

## Law and Analysis

{¶ 7} Preliminarily, we note that the Ohio Supreme Court has found that a conviction consists of a finding of guilt and a sentence. *State v. Whitfield*, 2010-Ohio-2, ¶ 12. Accordingly, we will only analyze the non-merged charges i.e., Bissell's convictions for felony murder (Count 1), failure to comply (Count 5), and failure to stop at the scene of an accident (Count 7). Bissell has not challenged his conviction for failure to stop at the scene of an accident; therefore, we will not address it. We now turn to Bissell's convictions for felony murder and failure to comply with the order or signal of a police officer.

{¶ 8} For ease of analysis, we will address the assignments of error out of order. In the fourth assignment of error, Bissell challenges his conviction for failing to comply with the order or signal of a police officer. Bissell argues that the failure to comply conviction was not supported by sufficient evidence or the manifest weight of the evidence.

{¶ 9} "A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production." *State v. Hunter*, 2006-Ohio-20, ¶ 41 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380 (1997). When reviewing the sufficiency of the evidence presented at trial, a reviewing court must determine "'whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Goins*, 2021-Ohio-1299, ¶ 13 (8th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In doing so, we must look at the

evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* This is not a question of whether the State's evidence is credible but "'whether, if believed, the evidence against a defendant would support a conviction.'" *Id.*, quoting *Thompkins* at 390.

{¶ 10} In contrast, "weight of the evidence involves the inclination of the greater amount of credible evidence." *Thompkins* at 387. Weight of the evidence concerns "the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386-387. This court must consider all the evidence in the record, the reasonable inferences to be drawn from it, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 11} In order to present sufficient evidence on the failure to comply charge, the State needed to establish that Bissell recklessly failed to comply with any lawful order or direction of any police. *Cleveland v. Krebs*, 2018-Ohio-746, ¶ 28-30 (8th Dist.) (noting that R.C. 2921.331(A) is not a strict liability offense and that the proper mens rea is recklessness). Bissell argues that there was no evidence that an officer gave him an order or signaled him to stop; therefore, there was insufficient evidence to support the conviction and the conviction was not supported by the manifest weight of the evidence. The State does not argue that there was a lawful order, rather

they argue that the large police presence and the fact of other drivers moving to Lanes 3 and 4 while Bissell travelled in Lane 2 was sufficient to establish that he failed to follow the lawful direction of police officers.

{¶ 12} No one testified that a lawful order or direction was given to Bissell. A conviction for failure to comply under R.C. 2921.331(A) requires evidence that there was (a) a lawful order or direction, and (b) that the order or direction came from an officer invested with authority to direct, control, or regulate traffic. *State v. Thigpen*, 2016-Ohio-1374, ¶ 38-39 (8th Dist.).

{¶ 13} Based on the foregoing, as there was no testimony regarding an order or direction, and no officer testified that they were invested with the authority to direct traffic, there was insufficient evidence to support the conviction for failure to comply with the order or signal of a police officer. Furthermore, where there is insufficient evidence of guilt, the conviction cannot be supported by the manifest weight of the evidence. *State v. Davis*, 2020-Ohio-3199, ¶ 42 (2d Dist.). Therefore, the fourth assignment of error is sustained as to Count 5 and the conviction is reversed.

{¶ 14} In the first assignment of error, Bissell challenges the sufficiency of the evidence supporting the finding of guilt on Counts 1, 2, and 3, felony murder and two counts of felonious assault. Specifically, he argues that there was insufficient evidence that he acted knowingly, and therefore the convictions should be reversed. Confining our review to Count 1, we agree.

{¶ 15} A conviction under R.C. 2903.02(B), felony murder, requires evidence that a person caused the death of another as a proximate result of committing or attempting to commit an offense of violence that is a felony of the first or second degree, in this case felonious assault under R.C. 2903.11(A)(1) and/or (A)(2). Felonious assault requires evidence that the defendant either knowingly caused serious physical harm to another or that the defendant knowingly caused or attempted to cause physical harm to another by means of a deadly weapon or dangerous ordnance. R.C. 2903.11(A)(1) and (2), respectively. Felony murder in this State is a strict liability offense, because although "intent to commit the predicate felony is required, intent to kill is not." *State v. Nolan*, 2014-Ohio-4800, ¶ 9.

{¶ 16} "The very purpose of the felony murder doctrine is to utilize the underlying felony as a substitute for the defendant's murderous intent and thereby raise an unintentional killing to the level of murder." *State v. Mays*, 2012-Ohio-838, ¶ 6 (2d Dist.), quoting *People v. Cahill*, 809 N.E.2d 561 (2003). "The social policy behind the felony murder rule is that of deterrence — the law punishes those who kill as incident to the commission of other dangerous felonies. In theory, the felony murder rule is supposed to cause would be felons to take extreme care not to kill anyone while they engage in criminal activity." *State v. Hairston*, 2009-Ohio-2346, ¶ 12 (10th Dist.).

{¶ 17} Here we must consider whether Bissell's conduct was knowing as used in the felonious assault statute. "A defendant acts knowingly when, although not intending the result, he or she is nevertheless aware that the result will probably

occur." *State v. Reed*, 2008-Ohio-312, ¶ 7 (8th Dist.), quoting *State v. Lee*, 1998 Ohio App. LEXIS 4150 (10th Dist. Sept. 3, 1998). When looking at R.C. 2903.11(A)(1), this court has noted that, when combined with R.C. 2901.22(B), the statute "'does not require that a defendant intend to cause "serious physical harm," but that the defendant acts with an awareness that the conduct probably will cause such harm.'" *Reed* at ¶ 7, quoting *Lee*. It follows that under R.C. 2903.11(A)(2), the defendant need not intend to cause or attempt to cause physical harm with a deadly weapon or dangerous ordnance, but that he acts with an awareness that his conduct will probably cause such harm.

{¶ 18} The State argues that Bissell's rate of speed alone was sufficient to establish that he acted knowingly. Brief of Appellant p. 14. However, the State produced no case law to support this argument. The cases cited, as described below, required more than speed to establish that someone knowingly caused serious harm.

{¶ 19} In *State v. Takacs*, 2015-Ohio-4585 (8th Dist.), a felonious assault case, the victim testified that after an encounter near a parking space, the defendant aimed his car at her and accelerated; she had to jump out of the way to avoid being hit. While his high rate of speed was a factor, there was evidence that the defendant was irate at the victim, video evidence that the defendant aimed his car at the victim, that witnesses heard the car accelerate, and that the defendant swerved towards the victim causing her to jump out of the way. The appellate court found that the conviction was supported by sufficient evidence and by the manifest weight of the evidence. In the instant case, there was no evidence of a prior altercation between

Bissell and Firefighter Tetrick, no evidence that Bissell saw Firefighter Tetrick in the road, or that he deliberately aimed his car at Firefighter Tetrick.

{¶ 20} In *State v. Matthews*, 2012-Ohio-5174 (8th Dist.), Matthews saw the primary victim in line in a parking lot waiting for a job fair. Matthews said she would be back and came back with a codefendant. She then challenged the primary victim to a fight. After the fight, which grew to include Matthews, her codefendant, the primary victim, and other people standing in a parking lot, Matthews got into her car and reversed at a high rate of speed hitting several people in the parking lot. The court ultimately found that there was sufficient evidence to establish that Matthews acted knowingly to commit the crime of felonious assault when she drove in reverse at a high rate of speed in a crowded parking lot. *Id.* at ¶ 29.

{¶ 21} In *State v. Thompson*, 2021-Ohio-376, ¶ 58-59 (8th Dist.), the court found that Thompson's conduct of driving at a high rate of speed with a human being on the hood of his car that he then drove into a fire hydrant and a tree created an inference that he was aware his conduct posed a high risk of causing serious physical harm to the victim.

{¶ 22} In *State v. Rickard*, 2015-Ohio-3298 (6th Dist.), the defendant bypassed two signs closing traffic and entered a construction zone in broad daylight where several workers, who were wearing high visibility clothing, stood. He then hit two poles before plowing into the workers, killing one. After exiting the vehicle, the defendant stated, "I should have killed every one of you all." These facts, together,

were sufficient to establish the defendant acted knowingly in committing the crimes of felonious assault and felony murder. *Id.* at ¶ 62.

{¶ 23} There is no doubt that Bissell caused the death of Firefighter Tetrick. Unlike the cases cited by the State, there is no evidence Bissell knowingly used his car as a weapon to cause serious physical harm. The State's argument that Bissell acted knowingly disregards the distinction between knowing and reckless conduct. The commentary to R.C. 2901.22 is instructive. Comparing knowledge to recklessness, the committee noted:

> Basing the definition of knowledge on probability and the definition of recklessness on likelihood is intentional. Something is "probable" when there is more reason for expectation or belief than not, whereas something is "likely" when there is merely good reason for expectation or belief.

{¶ 24} R.C. 2901.22(C) provides that "[a] person is reckless with respect to circumstances when, with heedless indifference of the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." Based on our review of the facts, Bissell acted recklessly, not knowingly.

{¶ 25} In addressing the issue of knowledge, the trial court noted:

> Much was made about the element of knowledge in this case. That the defendant did not knowingly cause the death of Johnny Tetrick. Under Ohio law, a person acts knowingly, regardless of his purpose, when he's aware that his conduct will probably cause a certain result or will probably be of a certain nature. It is not necessary that the accused be in a position to foresee precise consequence of his conduct. Only that his consequences be foreseeable from the sense that what actually transpired was natural and logical and that it was within the scope of the risk created by his conduct.
>
> This is [. . .] exactly what happened in this case. Traffic should not have been in lanes 1 and 2. First responders were there providing accident

investigation, clean up, and medical assistance. There was no reason for the defendant to be traveling in that lane of travel.

And, in fact, at one point the defendant, not only did he skirt around the vehicles by going from lane 2 to lane 3, at one point he skirted around one of the police vehicles on the left side between high-speed lane, lane no. 1 and the berm. So this shows that he was well aware of what the situation was at the time of the accident.

For those reasons I'm going to find the defendant guilty of all counts in the indictment.

(Tr. 365-366.)

{¶ 26} As seen above, in discussing Bissell's conduct, the trial court focused on the surrounding circumstances, the presence of police and fire, the traffic moving into Lanes 3 and 4, and the absence of traffic in Lane 2. Noting that Bissell was clearly aware of those circumstances, the trial court found that he acted knowingly such that Bissel was guilty on all counts. However, knowledge of the surrounding circumstances and acting anyway disregarding a substantial risk is a hallmark of reckless conduct. Bissell ignored the surrounding circumstances and disregarded a substantial and unjustifiable risk that first responders would be on the highway, especially near the scene of the original collision.

{¶ 27} Notably, "[m]ens rea is a graduated assessment of culpability based upon an actor's subjective appreciation of risk. As the degree of risk resulting from an action increases, so does the degree of culpability. Hence, recklessness implies an element of chance — the actor proceeding despite knowing that the conduct contains a risk that a certain result is likely. Knowing conduct means that the actor acts with a degree of certainty in one's intention that a result will occur." *State v.*

*Robinson*, 2007-Ohio-3646, ¶ 10 (8th Dist.). In essence, the mens rea examination is and must be independent of the separate consideration of the resulting harm. Otherwise, the required graduated assessment of culpability is blurred and potentially eliminated. Given these considerations, the evidence was insufficient to establish that Bissell acted knowingly.

{¶ 28} Accordingly, there was insufficient evidence to support the finding of guilt under R.C. 2903.02(B).

{¶ 29} In his second assignment of error, Bissell challenges his conviction for felony murder as against the manifest weight of the evidence. As we have noted previously, where there is insufficient evidence of guilt, the conviction cannot be supported by the manifest weight of the evidence. *Davis*, 2020-Ohio-3199, ¶ 42 (2d Dist.). Therefore, the first and second assignments of error are sustained as to Count 1 and the conviction reversed.

{¶ 30} Bissell also challenges the felony murder conviction in his third assignment of error. Bissell argues that his conviction of felony murder with a predicate offense of felonious assault violates the independent-felony merger doctrine. That doctrine argues that an offender should only be guilty of felony murder if the predicate felony is independent of the lethal act. *State v. Owens*, 2019-Ohio-2221, ¶ 27 (8th Dist.). This court has rejected that doctrine. *Owens*; *see also State v. Franks*, 2016-Ohio-5241, ¶ 15 (8th Dist.). Accordingly, the third assignment of error is overruled.

{¶ 31} Although Bissell's conduct failed to satisfy the mens rea of knowing, that does not mean his conduct is exempt from culpability. *See State v. Smith*, 2022-Ohio-269, ¶ 11. "It is well established that this court has the authority to reduce a conviction to that of a lesser included offense when it is supported by the record, rather than ordering an acquittal or a new trial." *State v. Reddy*, 2010-Ohio-5759, ¶ 35 (8th Dist.), citing *State v. Davis*, 8 Ohio App.3d 205 (8th Dist. 1982) and *State v. Sumlin*, 1978 Ohio App. LEXIS 10489 (8th Dist. 1978); *Smith* at ¶ 12, citing Crim.R. 33(A)(4) and R.C. 2945.79(D). The offense of involuntary manslaughter under R.C. 2903.04(A) is a lesser included offense of felony murder under R.C. 2903.02(B). *State v. Wadlington*, 2024-Ohio-1268, ¶ 36 (8th Dist.).

{¶ 32} Here, although there was insufficient evidence to support the conviction for murder under R.C. 2903.02(B), an unclassified felony, our review of the evidence shows that there was sufficient evidence presented to find Bissell guilty of the lesser included offense of involuntary manslaughter with the predicate offense of reckless assault. Involuntary manslaughter is established by showing that a person caused "the death of another . . . as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2903.04(A). A person is guilty of reckless assault when they "recklessly cause serious physical harm to another or another's unborn." R.C. 2903.13(B). The crime of reckless assault is a felony when the victim is a firefighter performing his duties. Former R.C. 2903.13(C)(5), renumbered to R.C. 2903.13(C)(5)(a). When the predicate offense is a felony, involuntary manslaughter is a felony of the first degree. R.C. 2903.04(C).

**{¶ 33}** We find that the record supports a conviction for involuntary manslaughter. The evidence established beyond a reasonable doubt that Bissell recklessly caused serious physical harm to Firefighter Tetrick leading to his death and that this occurred when Firefighter Tetrick was performing his duties as a firefighter. Accordingly, we vacate Bissell's conviction for murder under R.C. 2903.02(B) and modify the finding of guilt to the lesser included offense of involuntary manslaughter under R.C. 2903.04(A), a felony of the first degree. Based on the foregoing, we remand the case for resentencing.

**{¶ 34}** Judgment reversed and case remanded for proceedings consistent with this opinion.

It is ordered that the costs herein taxed be split between the parties.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, PRESIDING JUDGE

ANITA LASTER MAYS, J., CONCURS;
FRANK DANIEL CELEBREZZE, III, J., DISSENTS (WITH SEPARATE OPINION)

FRANK DANIEL CELEBREZZE, III, J., DISSENTING:

{¶ 35}   I respectfully dissent and would have affirmed every one of Bissell's convictions in their entirety.  My disagreement arises primarily from the majority's determination that Bissell did not act "knowingly" with regard to Counts 1, 2, and 3. Generally, however, I am very concerned about the implications of the majority's conclusions given the rise in automobile-related deaths that is currently plaguing our streets, and I am concerned about the implications for the safety of our police and fire departments, who work tirelessly to keep our streets safe.

{¶ 36} To convict Bissell of Count 1, murder, under R.C. 2903.02(B),[1] the State was required to prove beyond a reasonable doubt that Bissell "cause[d] the death of [Firefighter Tetrick] as a proximate result of [Bissell] committing . . . an offense of violence that is a felony of the first or second degree[.]"  R.C. 2903.02.

---

[1] This is known as the "felony-murder statute," which the Ohio Supreme Court has described as follows:

The felony-murder statute imposes what is in essence strict liability. Though intent to commit the predicate felony is required, intent to kill is not. *See State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498, ¶ 31-33; *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 43 (R.C. 2903.02(B) "does not contain a mens rea component"); *People v. Hernandez*, 82 N.Y.2d 309, 317, 604 N.Y.S.2d 524, 624 N.E.2d 661 (1993) ("The basic tenet of felony murder liability is that the mens rea of the underlying felony is imputed to the participant responsible for the killing. By operation of that legal fiction, the transferred intent allows the law to characterize a homicide, though unintended and not in the common design of the felons, as an intentional killing" [citation omitted]).

*State v. Nolan*, 2014-Ohio-4800, ¶ 9.

The State predicated this offense on a finding that Firefighter Tetrick's death was caused by felonious assault as charged in either Count 2 or 3.

{¶ 37} To convict Bissell of Count 2, felonious assault, under R.C. 2903.11(A)(1), the State was required to prove beyond a reasonable doubt that Bissell "knowingly . . . cause[d] physical harm to another[.]" R.C. 2903.11(A)(1). Regarding Count 3, the State was required to prove beyond a reasonable doubt that Bissell "knowingly . . . cause[d] or attempt[ed] to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance."

{¶ 38} Pursuant to Ohio law,

[a] person acts knowingly, *regardless of purpose*, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry *or acts with a conscious purpose to avoid learning the fact*.

(Emphasis added.) R.C. 2901.22(B).

{¶ 39} In contrast, recklessness is defined as

[when a person acts] with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.22(C).

{¶ 40} The Committee Notes accompanying R.C. 2901.22 specifically articulate the intent of the General Assembly in distinguishing between "knowledge" and "recklessness."

> Basing the definition of knowledge on probability and the definition of recklessness on likelihood is intentional. Something is "probable" when there is more reason for expectation or belief than not, whereas something is "likely" when there is merely good reason for expectation or belief.

*In re F.D.*, 2015-Ohio-2405, ¶ 18 (8th Dist.).

{¶ 41} State of mind may be "inferred from the totality of circumstances surrounding the incident." *State v. Rodriquez*, 2003-Ohio-3453, ¶ 36 (6th Dist.), citing *State v. Booth*, 133 Ohio App.3d 555, 562 (10th Dist. 1999). And, a person is "presumed to intend the natural, reasonable, and probable consequences of his voluntary acts." *State v. Morris*, 2016-Ohio-5490, ¶ 9 (1st Dist.), citing *State v. Johnson*, 56 Ohio St.2d 35, 39 (1978). Critical to this case is whether Bissell's actions rose to the level of "probably" causing physical harm or were only merely "likely" to cause physical harm. It is common knowledge that "probable" does not mean that a result has to be "certain."

{¶ 42} Unlike the majority, I would find that the totality of the evidence, beyond just Bissell's high rate of speed, established that Counts 2 and 3 were committed with the requisite mens rea of "knowingly."

{¶ 43} The ODOT traffic video (State's exhibit No. 2), depicting the aerial view of the scene, demonstrates that traffic was controlled, moving at a slow pace, and most vehicles displayed continuous brake lights, indicating that traffic was at a

near-standstill far ahead of the active police and emergency responder scene. Prior to Bissell's vehicle appearing, all vehicles in the gridlock yielded to the slowing traffic and the flashing lights of the many responding vehicles on scene. Bissell's vehicle is travelling noticeably faster than the other vehicles in the video before he traverses around two separate police vehicles; in one instance, Bissell passed a police vehicle, parked with its lights flashing, on the left by going into the shoulder of the road.

{¶ 44} Additionally, while cones, flares, and other typical "warning" signals were not in place, testimonial evidence at trial established that none of the responders on scene felt that the scene was not secure or presented any danger to them. The responders on the scene all testified that they felt the scene was safe, secure, and was controlled to allow them to attend to the individuals involved in the initial incident to which they were responding.

{¶ 45} One of the most contested issues both at trial and at oral argument was whether other vehicles were travelling in the lane where Bissell struck Firefighter Tetrick, which was the second lane from the left. The flipped sedan from the initial collision was taking up most of the far-left lane, but Bissell argues that it was unclear that the second-from-left lane was closed to traffic, as indicated by other vehicles travelling in that lane. Sergeant O'Haire, after watching State's exhibit No. 1B, footage from Officer Howard's body camera, indicated that he did not see any other cars travelling in the second-from-left lane except for Bissell. My own review of the footage demonstrates that perhaps one or two vehicles aside from Bissell traveled in that lane, but proceeded slowly compared to Bissell, and promptly moved

over upon discerning the extent of the scene and the heavy presence of the police and fire departments. None of the vehicles travelling in that lane continued through the lane next to the overturned vehicle in the far-left lane, as Bissell did. Bissell's vehicle can be heard before it is seen in the video, which cannot be said of any other vehicle traveling through the scene in the video. In fact, numerous vehicles stopped on their own initiative and waited for a signal from the responders. It is also clear that prior to and upon striking Firefighter Tetrick, Bissell did not take any evasive action; I cannot say that he swerved or applied his brakes — he struck Firefighter Tetrick and continued driving.

{¶ 46} Bissell also argues that he did not and would not have been able to see Firefighter Tetrick, particularly because there was a large semitruck that was parked right in front of where Firefighter Tetrick was walking. However, the presence of the semitruck does not bolster Bissell's argument. Bissell chose not to become acquainted with the scene by refusing to follow the flow of traffic, refusing to follow and yield to any potential obstacles or flashers indicating that there was a potentially dangerous scene up ahead, and travelling at a high rate of speed. Typically, when one's sight is impaired, one proceeds cautiously, slowly, and carefully until able to discern the full scope of what is ahead. In my opinion, Bissell's actions were no different than closing one's eyes and pressing the accelerator. To find otherwise, i.e., that one should throw caution to the wind, speed through what is clearly a hazardous and active scene, and hope for the best, would fly in the face of this State's commitment to keeping the roads safe.

{¶ 47} Knowledge may be imparted to a defendant where the actual recipient of the assault was unknown to the accused, but the circumstances made the injury "probable." *See, e.g., State v. Hill,* 2020-Ohio-1237, ¶ 19 (6th Dist.) (firing a weapon into an area without knowledge of the occupants is sufficient to establish a "knowing" attempt to cause physical harm). The circumstances in the instant matter are more or less the same. It is probable that speeding through an area with stopped traffic and a heavy first responder presence will result in one's vehicle colliding with something else; after all, there is a reason that the traffic is stopped and the first responders have blocked the lanes. And this incident occurred late at night in snowy weather conditions. Considering all of these factors together, Bissell's actions cannot be anything *but* "knowing."

{¶ 48} Based on the foregoing, I cannot say that Bissell lacked knowledge that (1) there was a heavy first responder presence on the highway, including numerous official vehicles with flashing lights and some blocking lanes; (2) traffic had slowed significantly and was nearly at a standstill; and (3) he was travelling at a higher rate of speed than any other vehicle. My review of the evidence indicates that Bissell acted knowingly in the sense that he knew that it was probable that his behavior and manner of driving would cause a collision, whether with another vehicle, an impediment in the roadway, or an on-foot individual, which is what unfortunately occurred in the instant matter. As I noted earlier, "probable" is not equivalent to "certain," and while Bissell surely could not be *certain* that his actions would cause physical harm to another, it was most certainly *probable*.

{¶ 49} Based on the totality of the evidence presented and the totality of the circumstances, it is difficult to conclude that the trial court lost its way or created a manifest injustice in determining that Bissell acted "knowingly." Under both a manifest weight and a sufficiency analysis, I would have affirmed the trial court's convictions for Counts 1, 2, and 3.

{¶ 50} I also disagree with the majority's reversal of Count 5, failure to comply with an order or signal of a police officer, that served as the predicate offense for Bissell's conviction of Count 6, involuntary manslaughter.

{¶ 51} To convict Bissell of involuntary manslaughter pursuant to R.C. 2903.04(B), the State was required to prove beyond a reasonable doubt that Bissell "cause[d] the death of another . . . as a proximate result of [Bissell] committing . . . a misdemeanor of any degree[.]" This count was predicated on Count 5, failure to comply with an order or signal of a police officer under R.C. 2921.331(A). Regarding this offense, the State was required to prove beyond a reasonable doubt that Bissell "fail[ed] to comply with any lawful order or direction of any police officer invested with authority to direct, control, or regulate traffic."

{¶ 52} In challenging these convictions as against the manifest weight of the evidence, Bissell argues that "there is no evidence that any police officer gave Bissell any order or direction at all, much less for regulation of traffic." He further argues that parked vehicles with flashing lights do not constitute directions or signals from a police officer to stop. I would, again, find that the totality of the evidence produced in this case does not support his argument.

{¶ 53} The mens rea required for a violation of R.C. 2921.331 is recklessness. *State v. Boyle*, 2012-Ohio-5581, ¶ 6 (11th Dist.).

{¶ 54} There was a heavy police presence on the scene, numerous police lights and vehicles attempting to control and regulate traffic, and other motorists had slowed or stopped. The evidence demonstrates that the other vehicles passing the scene had merged into the two right lanes where motorists were proceeding, albeit slowly. Not every vehicle in the backed-up line of traffic was receiving a direct order or "direction" from a police officer, but the stopped traffic and the flashing lights ahead permit a reasonable factfinder to determine that Bissell ignored the flow of traffic and plowed forward in direct contravention of the police's direction of traffic to allow them to respond to the accident scene. The officers were directing traffic by placing their vehicles on the road with their lights flashing, which arguably every motorist would interpret as a direction to move to the right because there is an active scene ahead. To hold otherwise would render these measures meaningless and convey to motorists that the police and fire department's attempts to secure a scene are merely "suggestions." Even though the direction was not verbal, I would find that there was an order; *all* of the other motorists followed it.

{¶ 55} Since I would have found that Bissell's conviction for failure to comply was not against the manifest weight or sufficiency of the evidence, I would have affirmed Bissell's convictions under Counts 4 and 5.

{¶ 56} For these reasons, I respectfully dissent.