**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bissell*, Slip Opinion No. 2026-Ohio-1965.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1965

THE STATE OF OHIO, APPELLEE, *v*. BISSELL, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bissell*, Slip Opinion No. 2026-Ohio-1965.]**

*Criminal law—Sufficiency of the evidence—Felonious assault—Felony murder— Failure to comply with an order or signal of a police officer—Convictions for felony murder and failure to comply with an order or signal of a police officer were supported by sufficient evidence—Court of appeals' judgment reversed and cause remanded.*

(No. 2024-1770—Submitted February 11, 2026—Decided May 29, 2026.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 113158, 2024-Ohio-5317.

_____

FISCHER, J., authored the opinion of the court, which KENNEDY, C.J., and DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ., joined.

**FISCHER, J.**

{¶ 1} Plaintiff-appellant, the State of Ohio, filed this discretionary appeal from the judgment of the Eighth District Court of Appeals, which reversed the convictions of defendant-appellee, Leander Bissell, for felony murder and failure to comply with an order or signal of a police officer based on insufficient evidence. Bissell's challenged convictions stemmed from his speeding around heavy traffic and parked police vehicles and through an accident scene, which resulted in his hitting and killing first responder Johnny Tetrick. Because we hold that the trial court's judgment convicting Bissell of felony murder and failure to comply was supported by sufficient evidence, we reverse the judgment of the Eighth District, and we remand the matter to the Eighth District for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} On November 19, 2022, at approximately 8:15 p.m., Tetrick and fellow firefighters from Engine Company 22 of the City of Cleveland Division of Fire received an emergency dispatch for a vehicle crash on Interstate 90, a four-lane highway, near the exit of Martin Luther King Boulevard. One vehicle had flipped over onto its top on the left shoulder of the highway, blocking a part of the far-left high-speed lane. By the time the firefighters arrived at the scene, an unusually large number of police had responded because the accident occurred on the border of Cleveland and the Village of Bratenahl. Police officers had parked several police vehicles with lights flashing in the left two highway lanes to funnel traffic away from the flipped vehicle and into the right two lanes. Traffic began funneling into the right two lanes of travel at a very slow rate of speed, moving around the parked police vehicles. Tetrick parked the firetruck just ahead of the rolled vehicle, and the firefighters exited their truck to begin assessing the scene for any fire or entrapment.

{¶ 3} Firefighter Lieutenant Jeffrey Vollmer, who was at the scene with Tetrick that night, testified that traffic in the left two lanes had been completely stopped and was proceeding slowly in the right two lanes through the accident scene. Lieutenant Vollmer testified that Tetrick had first checked on a person involved in the accident who was sitting in the back of a pickup truck on the right shoulder of the highway. Firefighter Anthony Trujillo accompanied Tetrick to render possible medical aid to the person on the right shoulder of the highway. Trujillo testified that police had stopped traffic to allow Tetrick and Trujillo to safely cross over the roadway. Once Tetrick and Trujillo determined that the person sitting in the truck did not need immediate medical aid, Tetrick and Trujillo began making their way from the right shoulder of the highway back across the right two lanes, at which point traffic was moving very slowly.

{¶ 4} While Tetrick was walking across the right two lanes and making his way into the center-left lane, Trujillo heard a car accelerating. Lieutenant Vollmer testified that he saw a white sedan moving at a high rate of speed and coming toward the center-left lane, but by the time he realized what was happening, it was too late. As Tetrick bent down to pick up debris from the roadway, the white sedan struck Tetrick in the center-left lane and kept driving. The force of the impact threw Tetrick approximately 102.5 feet in the roadway. Tetrick's fellow firefighters assembled around Tetrick, who was lying motionless in the roadway, and helped load him into an ambulance to be transported to the hospital. Tetrick was pronounced dead at the hospital.

{¶ 5} Police from Cleveland and Bratenahl immediately began an investigation to identify the driver of the white sedan. Detective Shawn Polocy at the Cleveland Police Department viewed a video recorded by a semitruck driver who happened to be stopped in traffic at the scene that night and recorded the incident. The video showed a white Chevrolet Malibu driving at a high rate of

speed and striking Tetrick. From his review of the video, Detective Polocy testified that he did not see any brake lights from the white car when it hit Tetrick.

{¶ 6} Sergeant Timothy O'Haire from the Village of Bratenahl viewed video footage from the Ohio Department of Transportation ("ODOT") cameras, which showed a birds-eye view of the incident. According to Sergeant O'Haire, based on his review of the ODOT video, the white car can be seen arriving on the scene of the accident in the left, high-speed lane. The car approached a parked police vehicle with flashing lights in the center-left lane, passed the police vehicle on the right, then reentered the center-left lane directly in front of the parked police vehicle and began accelerating. The car approached a second parked police vehicle with its lights activated that was straddling the left and center-left lanes. The car stopped momentarily behind the second police vehicle and then passed that police vehicle on the left, driving between the highway divider wall and the parked police vehicle. The car accelerated again and approached a third parked police vehicle blocking the left and center-left lanes. The car passed the third parked police vehicle on the left by again driving between the highway divider wall and the parked police vehicle. Finally, the car approached a fourth parked police vehicle in the far-left lane, which was parked behind the overturned vehicle from the original accident. The car passed the fourth police vehicle on the right by entering the center-left lane, at which point the car struck Tetrick. Sergeant O'Haire used a scale diagram of the accident scene, which showed that Tetrick had been thrown approximately 102.5 feet, to determine that the driver had been traveling approximately 49 m.p.h. at the time of impact.

{¶ 7} Cleveland police eventually located a white Chevrolet Malibu with front-end, passenger-side damage parked on Ridpath Avenue and East 156th Street. A piece of debris found at the accident scene matched the vehicle's front-bumper damage. The damaged vehicle was registered to Bissell. Police found Bissell inside one of the apartments across the street from where the vehicle was parked

and detained him. Police obtained a search warrant for Bissell's vehicle, and an investigation of Bissell's car further revealed the presence of a blue and yellow material on the passenger-side fender area, which matched the material of the blue nylon jacket and yellow safety vest that Tetrick had been wearing that night. An investigation of the airbag-control module from Bissell's car also revealed that the airbags never deployed and that the car had decelerated two miles per hour on impact.

{¶ 8} The State charged Bissell with two counts of felonious assault, felony murder, involuntary manslaughter, aggravated vehicular homicide, failure to comply with an order or signal of a police officer, and failure to stop after an accident. The matter proceeded to a bench trial, and the trial court found Bissell guilty of all charges. At sentencing, the trial court merged the felonious assault, involuntary manslaughter, and vehicular-homicide charges into the murder charge and sentenced Bissell to a term of 15 years to life in prison. The trial court also sentenced Bissell to one year in prison on the failure-to-stop charge, to run consecutively to the sentence on his felony-murder charge. Finally, the trial court sentenced Bissell to six months in prison on the failure-to-comply charge, to run concurrently with the sentence on his felony-murder charge, for an aggregate sentence of 16 years to life in prison. Bissell appealed his convictions to the Eighth District.

{¶ 9} On appeal, Bissell argued in relevant part that his felony-murder conviction was not supported by sufficient evidence, because the State had failed to prove that Bissell had acted knowingly for purposes of the underlying felonious-assault charge when he hit Tetrick with his vehicle. Bissell argued that no evidence existed to show that he saw Tetrick or anyone else in the roadway and that police had failed to provide Bissell with sufficient warning signs that pedestrians or safety personnel could be crossing the highway. At most, Bissell argued, his conduct was reckless. Bissell also argued that his failure-to-comply conviction was not

supported by sufficient evidence, because the State failed to prove that a police officer had given Bissell an order or direction. Bissell argued that unattended, parked police vehicles with flashing lights could not take the place of a direction or order from an actual police officer.

{¶ 10} The Eighth District reversed Bissell's convictions for felony murder and failure to comply and modified his felony-murder conviction to involuntary manslaughter. 2024-Ohio-5317, ¶ 1 (8th Dist.). As to the failure-to-comply charge, the Eighth District held that the State did not present sufficient evidence that any officer had given an order or direction to Bissell and that no officers testified that they had the authority to direct traffic. *Id.* at ¶ 13. As to the felony-murder charge, the Eighth District held that the State failed to adduce sufficient evidence that Bissell had acted knowingly. *Id.* at ¶ 27. According to the Eighth District, no evidence existed to show that Bissell had seen Tetrick in the roadway or that Bissell had deliberately aimed his car at Tetrick. *Id.* at ¶ 19. Instead, the Eighth District reasoned, Bissell ignored the surrounding circumstances, such as the heavy police presence and traffic moving into the right two lanes, and disregarded a substantial risk of harm, which was "a hallmark of reckless conduct." *Id.* at ¶ 26.

{¶ 11} Judge Celebrezze dissented from the majority opinion. According to Judge Celebrezze, Bissell's conduct in speeding through an area of stopped traffic and a heavy first-responder presence established sufficient evidence that Bissell acted knowingly when he hit Tetrick in the roadway because it was probable that Bissell's conduct would cause physical harm. *Id.* at ¶ 47-48 (Celebrezze, J., dissenting). With respect to the failure-to-comply charge, Judge Celebrezze reasoned that the parked police vehicles with flashing lights on the highway served as an order or direction from police officers. *Id.* at ¶ 54 (Celebrezze, J., dissenting).

{¶ 12} The State filed this discretionary appeal from the Eighth District's decision. This court initially declined to accept jurisdiction, 2025-Ohio-1296;

however, after the State moved for reconsideration, we accepted jurisdiction over the following propositions of law:

> Proposition of Law I: A person acts knowingly under R.C. 2901.22(B) when the person is aware that the conduct will probably cause a certain result. As a heightened form of recklessness, it does not require that person to purposefully intend to cause the resulting harm.

> Proposition of Law II: Something is "probable" when there is more reason for expectation or belief than not, whereas something is "likely" when there is merely good reason for expectation or belief. When a driver ignores police vehicles with flashing lights closing down highway lanes and speeds through a closed-off accident area, serious and even fatal injury to emergency personnel, other drivers, or pedestrians, is probable, not just likely.

> Proposition of Law III: A violation of R.C. 2921.331, failure to comply with order or signal of police officer, does not require a verbal command from a police officer. Police vehicles with flashing blue lights blocking lanes conveys a "lawful order or direction" that drivers must stay out of the lane.

(Underlining and boldface deleted.) *See* 2025-Ohio-2162.

## II. ANALYSIS

### A. Sufficient Evidence Exists to Establish That Bissell Acted Knowingly for Purposes of Felony Murder

{¶ 13} The State's first and second propositions of law relate to whether the State provided sufficient evidence at trial to establish that Bissell acted knowingly for purposes of felony murder.

7

{¶ 14} This court's review of the sufficiency of the evidence presents a legal issue that we review de novo. *State v. Dent*, 2020-Ohio-6670, ¶ 15. When reviewing whether sufficient evidence exists to support a conviction, "the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Groce*, 2020-Ohio-6671, ¶ 7, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 1997-Ohio-355, ¶ 49, fn. 4.

{¶ 15} The State charged Bissell with felony murder under R.C. 2903.02(B), which states that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." The State charged Bissell with two underlying felony offenses: felonious assault under R.C. 2903.11(A)(1) and R.C. 2903.11(A)(2). R.C. 2903.11(A) provides that "[n]o person shall knowingly do either of the following: (1) Cause serious physical harm to another . . .; (2) Cause or attempt to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance," here, a motor vehicle.

{¶ 16} To prove felonious assault under R.C. 2903.11(A), the State must provide sufficient evidence to establish that Bissell acted "knowingly." "Knowingly" is defined by statute as follows:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is

8

established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶ 17} According to the State, the Eighth District erred in reversing Bissell's felony-murder conviction by determining that Bissell's conduct was reckless and not knowing. A person acts recklessly under Ohio law when, "with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). The Eighth District reasoned that "'recklessness implies an element of chance—the actor proceeding despite knowing that the conduct contains a risk that a certain result is likely'" and that, by contrast, "'[k]nowing conduct means that the actor acts with a degree of certainty in one's intention that a result will occur.'" 2024-Ohio-5317 at ¶ 27 (8th Dist.), quoting *State v. Robinson*, 2007-Ohio-3646, ¶ 10 (8th Dist.). The Eighth District further reasoned that "[i]n essence, the mens rea examination is and must be independent of the separate consideration of the resulting harm. Otherwise, the required graduated assessment of culpability is blurred and potentially eliminated." *Id.*

{¶ 18} The Eighth District's reasoning is wrong. The Eighth District reasoned that criminal knowledge requires an offender's "intention that a result will occur," *id.*, but that is not so. "A person acts knowingly, *regardless of purpose*, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." (Emphasis added.) R.C. 2901.22(B). Therefore, an offender's purpose or intention to cause a result is not required when determining an offender's knowledge, "only an awareness of the probable consequences of one's actions." *State v. Crawl*, 2025-Ohio-2799, ¶ 17.

9

{¶ 19} In this case, the question is whether the State provided sufficient evidence that Bissell committed felonious assault under R.C. 2903.11(A)(1), meaning that Bissell was "aware" that his conduct in speeding through an accident scene on the highway would "probably" cause serious physical harm to first responder Tetrick, *see* R.C. 2901.22(B). In determining whether conduct will "probably" cause a result, we apply the plain meaning of the word "probably." "Probably" means "insofar as seems reasonably true, factual, or to be expected: without much doubt." *Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/probably (accessed Apr. 20, 2026) [https://perma.cc/79VL-ULGT]. This definition is also supported by the Legislative Service Commission comment to R.C. 2901.22, which provides that "[s]omething is 'probable' when there is more reason for expectation or belief than not."

{¶ 20} Here, the evidence viewed in the light most favorable to the State showed that serious physical harm was more likely than not to result from Bissell's conduct. The evidence presented by the State showed that Bissell was driving at night on a four-lane interstate when he encountered a traffic slowdown and a heavy police presence. Instead of proceeding with caution, Bissell swerved in between lanes, onto the shoulder of the road, and around at least four parked police vehicles, which were blocking the left two lanes of travel. The ODOT video exhibit confirms that no other driver proceeded in such manner. The semitruck driver's dash camera video shows Bissell traveling at a high rate of speed through the accident scene, which included a firetruck, multiple first responders and bystanders in the roadway, and a rolled-over vehicle. Bissell hit Tetrick at a speed of 49 m.p.h. and did not apply his brakes before hitting Tetrick. Finally, Bissell did not stop his vehicle after hitting Tetrick—he just kept driving and police later arrested him at his apartment.

{¶ 21} Bissell makes several arguments challenging the State's evidence of knowledge. Bissell argues that the State failed to show that Bissell saw Tetrick

before hitting him or that Bissell even knew that a car accident had occurred. And Bissell argues that the police did not provide any guidance to drivers warning them of first responders in the roadway, such as standing by their vehicles to direct traffic or placing any flares, traffic cones, or other signals in the roadway. Bissell also argues that he had no warning and was not subjectively aware that responders like Tetrick would be crossing from one side of the highway to the other, especially in the manner that he asserts Tetrick did: by crossing in front of a semitruck which blocked Tetrick's view of oncoming traffic. Bissell further argues that Tetrick failed to look for oncoming traffic, which violated fire department safety guidelines. Bissell also argues that the first responders should have parked the firetruck across the center-left lane where Bissell later struck Tetrick to physically block that lane instead of leaving that lane open to traffic where approximately 28 cars proceeded through it before Bissell. Ultimately, Bissell argues, his conduct was at worst reckless because he may have exhibited indifference to an improbable risk that someone would have been in the center-left lane.

{¶ 22} Bissell's various challenges to the sufficiency of the evidence against him for purposes of his felony-murder conviction are ultimately unavailing. Whether Bissell in fact saw Tetrick before hitting him is not clear from the evidence, but the evidence indicates that Bissell saw at least four parked police vehicles because he managed to swerve around each one. Trujillo, Tetrick's colleague, testified that police officers in the roadway had stopped traffic to allow Tetrick and Trujillo to safely cross. Moreover, the semitruck driver, who captured the incident on video, testified that when he started filming the traffic accident, first responders had completely stopped traffic. Finally, Bissell's argument that approximately 28 vehicles were seen driving through the center-left lane past the flipped vehicle like he did does not aid his position. As Bissell concedes, none of those vehicles were traveling at the same high rate of speed as Bissell. And none of those vehicles hit any of the first responders or bystanders in the roadway.

{¶ 23} Considering the evidence in this case in the light most favorable to the State, sufficient evidence exists to establish that Bissell was aware that his conduct would probably cause serious physical harm to a bystander or first responder like Tetrick for purposes of Bissell's felony-murder conviction.

## B. Bissell's Failure-to-Comply Conviction Was Supported by Sufficient Evidence

{¶ 24} The State's third proposition of law relates to the Eighth District's decision reversing Bissell's failure-to-comply conviction under R.C. 2921.331(A) for insufficient evidence.

{¶ 25} R.C. 2921.331(A) provides that "[n]o person shall fail to comply with any lawful order or direction of any police officer invested with authority to direct, control, or regulate traffic."  In reversing Bissell's failure-to-comply conviction, the Eighth District determined that the State did not produce any testimony that Bissell had received an order or direction from an officer invested with authority to direct traffic.  2024-Ohio-5317 at ¶ 13 (8th Dist.).  Bissell echoes this sentiment in his merit brief, arguing that no police officers testified at trial and that a parked police vehicle is not an "officer" under the statute.

{¶ 26} The State counters that the failure-to-comply statute does not require an individualized, verbal command from an officer and that here, the parked police vehicles with flashing lights in the roadway conveyed an order or direction.  We agree.  Ohio law requires highway motorists to "proceed with due caution and, if possible . . . [to] change lanes" when approaching a stationary public-safety or emergency vehicle with flashing lights.  R.C. 4511.213(A)(1); *see also* R.C. 4513.17(D)(2) (only a public law enforcement officer can display flashing blue lights).  Therefore, when the police officers parked their police vehicles with flashing lights in the left and center-left lanes of the interstate, they communicated a direction to passing motorists like Bissell to proceed with caution and to move

12

into the right two lanes of travel. The evidence shows that, at a minimum, Bissell passed four police vehicles with flashing lights.

{¶ 27} Not only did the parked police vehicles on the highway serve as a direction to passing motorists, but testimony from the witnesses at trial also provided evidence that passing motorists like Bissell received directions from police officers who guided traffic around and through the accident scene. Lieutenant Vollmer testified that when Tetrick and Trujillo crossed the highway to aid one of the people involved in the vehicle rollover, police officers were in the process of securing the right two lanes by using their flashlights to make eye contact with drivers. Bryan Burvis, another firefighter at the scene, testified that with respect to the right two lanes, "some uniformed police officers guid[ed] traffic slowly through the scene."

{¶ 28} Viewing the evidence in the light most favorable to the State, Bissell failed to comply with an order or signal of a police officer when he drove in the center-left lane of travel at a high rate of speed despite the presence of parked police vehicles and police officers funneling traffic out of the left two lanes of travel around the accident scene. Therefore, sufficient evidence exists to support Bissell's conviction for failure to comply with an order or signal of a police officer.

### III. CONCLUSION

{¶ 29} Because we determine that the State produced sufficient evidence to support Bissell's convictions for felony murder and failure to comply with an order or signal of a police officer, we reverse the judgment of the Eighth District Court of Appeals. We remand the matter to the Eighth District for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

_____

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Sarah E. Hutnik, Daniel T. Van, and Michael R. Wajda, Assistant Prosecuting Attorneys, for appellant.

Law Office of Timothy F. Sweeney and Timothy Sweeney, for appellee.

Mathura J. Sridharan, Solicitor General, Jana M. Bosch, Deputy Solicitor General, and Henry Appel, Principal Assistant Attorney General, urging reversal for amicus curiae Ohio Attorney General Dave Yost.

Gwen E. Callender, urging reversal for amicus curiae Fraternal Order of Police of Ohio, Inc.

Livorno and Arnett Co., L.P.A., Henry A. Arnett, and Colleen M. Arnett, urging reversal for amicus curiae Ohio Association of Professional Fire Fighters.

Steven L. Taylor, urging reversal for amicus curiae Ohio Prosecuting Attorneys Association.

Robert Barnhart, urging affirmance for amicus curiae Certain Ohio Criminal Law Professors.

_____